## WAREHAM MORSE *vs.* JOSIAH BELLOWS.

WHERE A promised B if he would procure an assignment of certain bonds held against him by individuals in Connecticut, for the payment of claims due from him therein specified, he would pay B the amount of said claims, it was *holden* that a subsequent procurement by B of an assignment of said bonds was such a compliance with the proposition of A as to constitute a binding contract betwixt said parties, and that there was a sufficient consideration and mutuality betwixt the parties, notwithstanding there was no original promise on the part of A to comply with said proposition.

In such case, an assignment of a bond is a valid consideration for a promise of payment to the assignee ; and, where promise of payment is made to him, a suit may be maintained for the amount of the claim in the assignee's *own name ;* and it is immaterial whether the promise be before, or subsequent to the assignment.

When a proposition is made as above there must be a compliance within a reasonable time ; and what is a reasonable time, when the contract is silent upon the subject, is a question of law. Under the circumstances of this case, though a period of nearly two years had elapsed, a compliance within such time was *holden* to be reasonable.

One partner cannot bind his co-partner by *deed* to any new liabilities, but he may, by deed, bar him of a right which they possess jointly, and may individually adjust, receive payment, or release any partnership debt; and this may be done by either partner after a dissolution of the partnership.

A certificate of a register of probate is not competent evidence of a grant of letters of administration. If a record of the appointment is kept, a copy of the record is the proper evidence.

Where individuals, as assignees of another, attempt to assign a deed for him, a recital in the deed of their authority to act is insufficient. Their authority as assignees must be shown.

Where A promised B a certain consideration if he would procure to himself an assignment of a bond outstanding against A, it was *holden* that A was not liable on such promise, until such bond was produced, or shown to have been lost by B subsequently to an assignment to him. An assignment of *the debt* secured by said bond was *holden* to be no evidence of a compliance with the contract.

Tuis was an action of assumpsit. There were four counts in the declaration.

The first count is on a note dated February 12, 1830, for $1217.04, payable to the plaintiff on demand and interest.

The second count is for $5000 money had and received.

The third count alleges that the defendant, on the 31st of July, 1817, bound himself by deed to W. C. Hall, to Charles and David Churchill, under the name and firm of C. & D. Churchill, and to Sylvester and Leonard Pulsifer, under the name and firm of S. & L. Pulsifer, to pay them respectively fifty per cent. on all sums due to them from one Gordon Whitmore within one year after a recovery in a suit about to be commenced in the circuit court of the United States in this state, in the name of said Whitmore against Mills Olcott;—that Whitmore was indebted to Hall in the sum of $3000, to S. & L. Pulsifer $2000, and to C. & D. Churchill $2000—and that a suit was duly commenced, and a recovery was had in the name of said Whitmore against the said Olcott, on the 21st of March, 1821;—that on the 31st of May, 1828, it was agreed between the plaintiff and defendant that, in consideration that the plaintiff would procure an assignment to himself of the said deed, given by

the defendant as aforesaid to Hall and others, he (the defendant) should pay the plaintiff all such sums as he was bound to pay Hall and others on demand; and that on the 23d April, 1830, the plaintiff procured an assignment to himself of the said deed, and that there was then and there due on the same to the said Hall and others the sums respectively above named, of all which the defendant had notice, and thereby became liable, and then and there promised the plaintiff to pay said sums on demand. Yet, though often requested, to wit. on the 10th day of April, 1833, he hath not paid the same, but neglects.

The fourth count was like the third, on a like deed, given by the defendant to W. Cooper, alleging that said Whitmore was indebted to said Cooper in the sum of $1000, and that an assignment was procured, demand made, &c. ; but the defendant had not paid said sum.

The cause was tried at the September term, 1834, on the general issue.

The making of the note mentioned in the first count was admitted by the defendant. Anthony W. Morse testified that in May, 1828, or 1829, the defendant told the plaintiff that if he (the plaintiff) would procure from the creditors mentioned in the 3d and 4th counts a release, he (the defendant) would pay him the amount of the claims which those creditors had upon the defendant.

This Bellows repeated several times, but refused to give a written contract, saying his word was as good as his bond. George Wheeler testified that in May, 1828, or 1829, he heard the defendant make declarations and offers to the effect above stated by A. W. Morse.

The plaintiff offered in evidence the report of an auditor in the case Wareham Morse *vs.* Gordon Whitmore and Josiah Bellows, as trustee, in which the auditor found the amount of the claims of Whitmore's creditors, mentioned in the 3d and 4th counts in this case against Bellows to be, with interest to May 7, 1831, $1989.37. The plaintiff also offered in

evidence a disclosure made by the defendant in a suit brought by A. W. Morse against Gordon Whitmore as principal, and the said Bellows as trustee, in which disclosure the defendant stated that he gave to the creditors of Whitmore, mentioned in the third count in this case, a bond conditioned to pay them 50 per cent. on their claims, in one year after the recovery in the suit to be brought against Olcott; and that he gave a similar bond to W. Cooper.

It appeared by the same disclosure that the suit by Whitmore *vs.* Olcott, in the circuit court in this state, was terminated by a compromise between Bellows and Olcott, on the 21 March, 1821.

The plaintiff also offered in evidence a deed made by S. Pulsifer, dated April 23, 1830; another, made by Charles Churchill, dated April 21, 1830; another, made by Samuel Cooper, dated April 21, 1830, and another, made by Samuel Cooper and Henry Carrington, dated April 20, 1830. S. Pulsifer by his deed assigned to Wareham Morse all his right, and all the right of S. & L. Pulsifer to any claims against Gordon Whitmore, or Josiah Bellows, by bond or otherwise; C. Churchill, reciting in the deed that he was surviving partner of the firm of C. & D. Churchill, assigned by the deed all his claims and all claims of the firm against Whitmore, or Bellows, to this plaintiff; S. Cooper by his deed, reciting that he was administrator of William Cooper, assigned to this plaintiff all his claims as administrator against Whitmore, or Bellows; Cooper and Carrington, by their deed describing themselves as "assignees in fact of W. C. Hall," assigned to the plaintiff all claims of said Hall against Whitmore & Bellows.

The plaintiff also offered in evidence a *certificate,* signed by the clerk of a probate court in Connecticut, that Samuel Cooper and Samuel Gill were administrators of William Cooper, and that Gill was dead. This certificate was dated April 22, 1830.

It appeared that on the 3d October, 1830, before the com-

mencement of this suit, the assignments were shown to the defendant, and payment demanded.

On the part of the defendant it was objected—

1. That the evidence offered did not prove the contracts alleged in the third and fourth counts, or any contract at all —the proof showing only an offer, which was not accepted by the plaintiff, or at least not accepted within a reasonable time.

2. That the evidence was not sufficient to sustain the 3d or 4th counts, because the bond given to Hall and others by Bellows was not produced, nor any reason shown why it was not produced.

3. That the claim of S. & L. Pulsifer was not legally assigned, because the deed was executed by S. Pulsifer alone.

4. The assignment made by C. Churchill was without legal effect, because it was not shown that the other partner was dead.

5. That the assignment by Samuel Cooper was without legal effect, because there was no competent evidence that he was administrator.

6. That the assignment made by Cooper & Carrington was without legal effect, because it did not appear that they were assignees of W. C. Hall.

A verdict was taken by consent for the plaintiff for the whole amount of his claims, subject to the opinion of the court upon the foregoing facts; and the case was transferred to this court for their decision.

*Smith*, for the defendant, remarked that no objection was taken as to the plaintiff's right of recovery upon the first count, and that on the second count no evidence was offered. As to the remaining counts, which are the third and fourth, he contended that the plaintiff had no cause of action; that these counts set forth no valid contract; or, should this be determined otherwise, that they were not supported by the testimony produced. These counts do not show a contract,

but a mere proposition, unaccepted at the time, and made without consideration.

"An agreement is said to be *aggregatio mentium*; when two or more minds are united in a thing done, or to be done, or where a *mutual assent* is given to do, or not to do a particular act;" and it ought to be so certain and complete that either party may have an action upon it. *Comyn's Dig., Agreement, A* 1.

Both the contracting parties must assent. In *Cook* vs. *Oxley*, 3 *Term. Rep.* 652, the declaration stated that the defendant had proposed to sell and deliver to the plaintiff goods on certain terms, if the plaintiff would agree to purchase them on such terms, and would give notice thereof to the defendant before the hour of four o'clock; and the plaintiff averred that he did give notice before that hour. It was holden, that as the engagement, at the time it was entered into, was all on one side, it was *nudum pactum* for want of *mutuality*. 6 *Petersdorff's Abr.* 136, *and cases cited ;* 2 *Lev.* 23 ; 2 *Saund.* 850 ; 3 *Mod.* 237 ; *Carthew* 38.

No express contract or agreement can be raised from a mere *casual speaking* in discourse.

As if there be a discourse between the father of A, and B, in relation to a marriage between A and the daughter of B ; and B, in that discourse, declares and publishes to the father of A, "that he would give to him, who should marry his daughter with his consent, £100, and after this declaration, A marries the daughter of B, with his consent, yet it was holden that this declaration and publication of B shall raise no promise upon which an action of assumpsit shall be brought ; for these general words do not include any promise, and the agreement must be complete upon which an express assumpsit lies." 1 *Roll. Ab.* 6 ; *Com. Dig. Assumpsit F*, 2 ; *Com. Con.* 5.

In this case the defendant made no contract to procure an assignment of the bond. He did not agree at the time to the proposition of the plaintiff, nor until a year and a half

afterwards.    There was therefore no mutuality of contract.

The evidence of the assignment, also, is not sufficient, as the bond is not produced.    The bond is the best evidence to show the extent of the defendant's liability.    No reason is offered why it is not produced ; the proof being of a mere naked assignment, *referring* to a bond, but not on the back of it.

Parole evidence of the contents of the bond is inadmissible, until it is shown to be lost.

The exceptions taken as to defects in the form and completeness of the assignments by the several creditors, are urged and insisted upon.    The reasons for the exceptions, and that they are well taken, is apparent upon the face of them.

*Bell*, for the plaintiff.    The defendant takes several exceptions to the plaintiff's right to recover.

1. That the evidence offered does not prove the contract in the third and fourth counts, or any contract at all, being nothing but a proposition, which was not accepted in a reasonable time.

The evidence of Anthony W. Morse is that in May, 1828 or 1829, the defendant told the plaintiff that if he would procure a release of the creditors named in the declaration, he would pay him the amount of the claims which those creditors had against the defendant.

George Wheeler says, that in May, 1828, or 1829, the defendant said there were demands in Connecticut which he was bound to pay, and he would pay the said demands to any person who would pay them, or take an assignment of them—or words to that effect—or discharge the said defendant from said demands ; and addressing Anthony W. Morse, said, "If you, or your brother Wareham, will produce the same, I will pay them."

There can be no reasonable doubt but this proves, so far as it goes, the contract stated in the third and fourth counts of the plaintiff's declaration.

The contract stated in the declaration is that the defendant gave his bond to Hall, Churchill and Pulsifer, in 1817, to pay them 50 per cent. on their claims against Whitmore, in one year after recovery should be had in favor of said Whitmore against Mills Olcott.

This is fully proved by defendant's admissions. There is no occasion, therefore, to produce the bond.

Wheeler swears that in May, 1828 or 1829, the defendant stated to the plaintiff that he had given such a bond, and that if he would pay them, or take an assignment of the bond, or discharge the defendant from those creditors, he would pay the plaintiff the same. The testimony of Anthony W. Morse is to the same point.

The proposition is in substance—"If you will enable yourself to give me a discharge from those creditors, I will pay you what I am bound to pay them;" and this is the contract stated in the declaration, and maintained in the proof, if the plaintiff has in other respects brought himself within it.

But if it were nothing but a proposition, as contended for by the defendant, we say it was a proposition unlimited as to time. If the plaintiff complied with the proposition in a *reasonable time*—that is, any time before the relations of the parties had changed as to the subject matter—the defendant is bound.

There was no time limited within which the plaintiff was to procure the assignment; and there is no pretence that the circumstances or relations of the parties had changed after the proposition, and before the assignment. The entire amount of whatever the defendant held as the property of Whitmore is still left, by the judgment of this court, in the defendant's hands, to pay this very claim. The defendant has neither paid the creditors, nor agreed to pay them, or any other person, the claims now demanded of him by the plaintiff. Why, then, does the defendant say the proposition was not accepted in a reasonable time? Whether

it was a reasonable time or not does not depend upon the absolute time which has elapsed, but on that, and all the circumstances of the case. If, then, this proposition was made in May, 1828, and the defendant was not notified till October, 1830, that the assignment was completed, we think it could not be held unreasonable, unless the defendant's situation in regard to the claims themselves had changed. But of this there is no pretence whatsoever.

"If a man promise another in consideration that he will 'assign him a certain term to pay him £10, this is a good 'assumpsit, though the *time* of the *assignment* and *pay-* '*ment* be not appointed. For the £10 shall be paid in a 'reasonable time after the assignment—which must also be 'made in a reasonable time after the agreement." 1 *Com. Con.* 4 ; 1 *Roll. Ab.* 14.

There can be no doubt that such is the law ; and there is as little doubt that the court must determine, on all the circumstances, what is a reasonable time for the parties to carry their agreement into effect.

Taking this as a contract, or proposition, made in May, 1828, and notice of the assignment in October, 1830, we think it cannot be held unreasonable, unless the circumstances of the parties have changed so as to affect the subject matter. But if, as the fact was, the contract was in May, 1829, and the assignment in April, 1830, there is no pretence that the delay was unreasonable. The defendant's contract had been made in 1817. All the obligees in the bond resided in Connecticut—some had died and others had failed. It would have been unreasonable to have exacted an earlier compliance. But the decisive answer is that the defendant gave a proposition *unlimited as to time,* and nothing has been shown or in fact exists to show that he is in any manner injured by delay. He had Whitmore's money then, and he has it now. He contracted no new responsibility, and altered no old one. He stands now precisely as he did in May, 1828, only that his right to retain this very

money, for *this very purpose,* has been judicially established since.

But it is not necessary for the plaintiff to show a *contract* in this case betwixt the plaintiff and the defendant. The defendant had made his *contract* with the Connecticut creditors to pay them. This contract was not assignable at law as a matter of right. The mere assignment would create no obligation on the defendant to pay the plaintiff, but the *defendant's assent* to the assignment would.

The defendant is bound to pay, by the original contract; and when he assents to the assignment he holds the money for the assignee. And an action for money had and received would lie by the assignee. 4 *Esp. Rep.* 204; 2 *Com Con.* 6.

It is wholly immaterial whether this assent is given before or after the assignment. If the assent is once given, it remains good until revoked or withdrawn. Here the defendant gave his unqualified assent, in 1828, or 1829, that the plaintiff should become the holder of his bonds. The assent was never withdrawn. The defendant is, therefore, bound. The defendant could not even withdraw his assent, once given, after the plaintiff had taken any step occasioning expense or trouble, without an indemnity. We hold, therefore, that the defendant is bound to pay, if the plaintiff has entitled himself to demand the same upon the assignments, as the proof now stands. We shall, therefore, examine the other objections.

2. The defendant objects that the bond was not produced. The plaintiff was not bound to produce the bond. He did not declare upon it. He produced clear and unquestionable evidence of the obligation, from the defendant himself, under oath.

3. The defendant objects that the claim of S. & L. Pulsifer was not legally assigned, because the deed was executed by S. Pulsifer alone.

The claim in this case was a partnership claim due to S. & L. Pulsifer, and it is in form assigned by one partner *un-*

*der seal.* But this was not necessary. The claim against Pulsifer was matter of account, and might be assigned by parole, or any writing not under seal. It was clearly not necessary, to assign the bond, that the assignment should be under seal. If Sylvester Pulsifer had the right and power after the dissolution to assign this bond and claim, it being part of the copartnership effects, its being under seal will not prevent its having the effect of an assignment.

It is laid down by *Watson*, "that if a partnership is dis- 'solved by consent, this does not determine the legal inter- 'est, which continues as before ; so that the property of the 'stock of the partner so going out is not divested thereby, 'but he remains equally entitled as joint owner. And one 'partner, even after a dissolution by bankruptcy, may dis- 'pose of the partnership effects without fraud." *Watson on Partnership*, 124, 125, 140 ; *Cowp. Rep.* 449.

We hold that each of the partners, after a dissolution, has the same power to sell and dispose of the copartnership property then on hand as he had before. His interest is the same after a dissolution as before. As joint owner, he may sell and dispose of the partnership effects, and receive payments, &c., as before. He cannot bind the former partners by any new contract, except in certain cases. In this case Sylvester Pulsifer had a perfect right to sell and dispose of the claim against Whitmore. The authority of the partnership remained for the disposition of all the partnership property. His contract of April 23, 1830, purports to assign all interest of the copartnership to the plaintiff ; and, though the assignment is not required to be under seal, it is not rendered invalid by being under seal. We, therefore, hold the evidence fully made out in regard to the plaintiff's right to recover on the claim of S. & L. Pulsifer.

4. The defendant objects that the assignment of Charles Churchill was without legal effect, because it was not shown that the other partner was dead.

The surviving partner would clearly have the right to

make the assignment. The assignment is duly proved, and contains the allegation that he is surviving partner. If this is true in fact the assignment is sufficient. If it is not true in fact, the other partner is living, and it is a sufficient assignment of all the copartnership right; for either partner is competent to assign all the interest of the copartnership. So that, on either supposition, it is a sufficient assignment of the copartnership interest.

5. The defendant objects that the assignment by said Cooper was without legal effect, because there was no competent evidence that he was administrator.

By the assignment, Samuel Cooper, as administrator of William Cooper, assigns the claims of William Cooper against Whitmore, or Bellows. The deed recites that he is administrator. There is also the certificate of the register of probate that Samuel Cooper is administrator of the goods and estate of William Cooper; that he was appointed April 24, 1820, and is still administrator; and also the certificate of John Alsop, judge of probate, that the clerk's certificate is in due form. This would seem to vest in Samuel Cooper the legal right to this claim; and his assignment, if he has the right, seems to be properly made.

6. The defendant objects that the assignment of Cooper and Carrington is without legal effect, because it did not appear that they were assignees in fact of W. C. Hall.

This objection is so far true, that it does not appear in any other way than by the assignment itself that they were assignees. The testimony of Rand to that effect was not taken in due form.

Upham, J., delivered the opinion of the court.

In this case, it is admitted that the plaintiff is entitled to recover the amount of the note declared upon in the first count. On the second count no evidence was offered; and the only controversy betwixt the parties is, whether the plaintiff is entitled to recover any thing of the defendant

under the third and fourth counts in the declaration. By the verdict as taken the full amount claimed under those counts was allowed the plaintiff, and judgment must be rendered for this sum, unless the objections which have been taken should prevail.

It is necessary, then, to enquire into the nature of the contract declared upon in the third and fourth counts, and whether the same has been complied with.

The third count alleges that the defendant had bound himself by deed to William C. Hall, to the firm of C. & D. Churchill, and the firm of S. & L. Pulsifer, to pay them fifty per cent. on all sums due from them to Gordon Whitmore, within one year after a recovery in a suit then about to be instituted in the name of Whitmore *vs.* Mills Olcott. On this suit judgment was subsequently recovered in favor of said Whitmore, and the sum of fifty per cent. on the demands of Hall and others had thus become due ; and the plaintiff alleges that it was agreed betwixt him and the defendant, that in consideration of his procuring *an assignment to himself of the said deed*, given by the defendant to the said Hall and others, that the defendant promised to pay him the amount that he was bound by said deed to pay said Hall and others.

The fourth count recites that a similar contract was made by deed with one William Cooper, and that a similar engagement was entered into by the defendant to pay the plaintiff the amount due from him to Cooper, provided he procured an assignment of the said deed to Cooper.

It is objected, on the part of the defendant, that no contract is set forth in these counts ; that it is the statement of a mere proposition, to which no offer of compliance was made by the plaintiff, and no assent given, and for which there was no consideration.

This was true at the time the proposal was made ; but there are many instances of this kind, where the subsequent acts of the party, in compliance with a proposition made,

constitute a sufficient assent, so as to make a perfect mutuality of agreement and obligation betwixt the parties, and form an undoubted consideration for a recovery on such a promise.

In the case *Sturges and al.* vs. *Robbins,* 7 *Mass. R.* 301, the declaration alleged that the defendant engaged to the plaintiffs " if they would credit one Elijah Davis a sum not exceeding five hundred dollars, if said Davis did not pay the same in twelve months, that the defendant would pay it."    This was a mere proposition, which the defendant could accept or not, at his option ; but a compliance with the proposal within any reasonable time was holden ٜto be obligatory upon the defendant.

In *Train* vs. *Gold,* 5 *Pick.* 384, the agent of a creditor gave his indemnity to an officer in another state to save him harmless for levying on certain property, and engaged to procure some one to be answerable with him.    The defendant, who was the attorney of the creditor, wrote to the officer, referring to the agreement of the agent, and promised that he should at all times be saved harmless.    No notice was given by the officer, of any acceptance of the indemnity thus tendered by the attorney ; but the acquiescence of the officer in the offer, without calling on the attorney for any farther security, and his subsequent incurring of expense, relying on said promise, was considered a sufficient acceptance, and the attorney was holden liable.

In that case, the court say it is now well settled, that all executory contracts, whether verbal or written, if not under seal, are void as between the contracting parties, unless they are made on a good consideration ; but if a contract is deliberately made without fraud, and with a full knowledge of all the facts, the least consideration will be sufficient.

Thus if A demises certain lands to B, rendering rent, and B assigns the same to D, and rent becomes due, which D promises to pay to A if he will show him a deed by which it may appear that rent is due, and A shows it accordingly,

the promise is binding; the showing the deed being a sufficient consideration. *Sturlyn* vs. *Albany, Cro. Eliz.* 67.

So if A promises B to pay him a certain sum of money if he will call for it at a particular time, and B calls accordingly, the promise is binding—the calling for the money being a sufficient consideration. For any gain to the promiser, or loss to the promisee, however trifling, is a sufficient consideration to support an express promise.

Nor is it necessary that the consideration should exist at the time of making the promise; for if the person to whom a promise is made should incur any loss, expense or liability in consequence of the promise, and relying upon it, the promise thereupon becomes obligatory. Thus if A promise B to pay him a sum of money if he will do a particular act, and B does the act, the promise thereupon becomes binding, although B at the time of the promise does not engage to do the act. In the intermediate time, the obligation of the contract, or promise, is suspended; for until the performance of the condition of the promise, there is no consideration, and the promise is *nudum pactum;* but on the performance of the condition by the promisee, it is clothed with a valid consideration, which relates back to the promise, and it then becomes obligatory.

So if a reward be offered for the apprehension of a culprit, or for the doing of any other lawful act, the promise, when made, is *nudum pactum;* but when any one, relying upon the promised reward, performs the condition, this is a good consideration for the previous promise, and it thereupon becomes binding upon the promiser.

On these principles it was holden that the defendant in that action was liable on his promise, for the reason that the officer subsequently incurred loss and expense in defending his acts, relying on the defendant's indemnity. See, also, *Pillans* vs. *Mierop,* 3 *Bur.* 1663 ; 3 *Bos. & Pul.* 249, *note;* 1 *Com. Con.* 17 ; *Metcalf's Yel.* 236 ; *Moies* vs. *Bird,* 11 *Mass.* 436 ; *Mason* vs. *Pritchard,* 12 *East* 227 ; 1 *Camp.*

*N. P. Rep.* 242 ; *Merle* vs. *Wells,* 2 *Campb.* 413 ; *Lent &*
*al.* vs. *Padelford,* 10 *Mass.* 230 ; *Fell on Guarantees, p.*
56 ; *Stadt* vs. *Lill,* 9 *East* 348.

In *Stadt* vs. *Lill,* 9 *East* 348, the court remark that the
rule as to mutuality of a contract has been more relaxed
than the rule as to consideration, and that no engagement
need appear on the part of the person to whom any debt or
engagement is secured, to do that which is the consideration
of the parties' promise. It is sufficient that in point of fact
he does it, viz. that he furnishes goods, extends credit, &c.,
and upon his so doing the mutuality attaches.

The case of *Harris* vs. *Stevens,* which was recently de-
cided in Sullivan county, see *ante,* 464, is similar in charac-
ter to the present case. There a proposition was made which
was subsequently complied with, and on acceptance and
compliance with its terms, a beneficial interest in the con-
tract was holden to extend back to the date of the propo-
sition.

In this case a proposition was made, during the pendency
of suits against the defendant as trustee, in which the defen-
dant claimed to hold a certain amount of funds in his hands
for the payment of debts in Connecticut—that if this plain-
tiff would procure an assignment of those claims, the money
should be paid him. It does not appear to have been a mere
casual conversation, but a proposition in apparent good faith,
originating from facts brought out in suits then pending, and
in which this plaintiff at the time had an interest. The
extent of this liability had been shown by the oath of the
defendant, and the proposition was clearly and repeatedly
made. No reason can be assigned for the making of it, ex-
cept as the basis of a contract, and on the ground that the
procurement of such an assignment would be a benefit to
the plaintiff, that he thus might liquidate outstanding claims
against him for which he held the funds, and which might
be forwarded, and enforced against him at any moment.

If such was the offer, a subsequent compliance, within a

reasonable time, would constitute a contract. The case is similar in all respects to those cited, and is fully sustained by the principles laid down in those cases, which we have cited at length, as the basis of their decisions. We hold, therefore, that the exceptions taken as to the validity of the contract cannot avail ; that the proposition was such as might well be subsequently accepted, and that such acceptance and compliance with its terms formed a sufficient consideration and mutuality betwixt the parties in the making of the contract.

Should we hold otherwise, the only effect would be, in this case, to turn the plaintiff round to suits in the name of the original creditors. The plaintiff having the assignments, *with notice,* it imposes an equitable and moral obligation on the defendant to pay the money to the plaintiff as assignee. It would be a fraud on the plaintiff, to pay the original creditors. Having the assignment merely would not be sufficient to support an implied assumpsit in the plaintiff's name, but it would be a good consideration for an express promise to the plaintiff upon which an action in his own name might be sustained. The authorities are clear upon this point, and it would seem to be of but little consequence whether such promise be made before, or after the assignment, provided such assignment be obtained in pursuance of such promise, and within a reasonable time. If so, suit in the plaintiff's name might well be instituted by virtue of the assignment, and promise. *Crocker & ux.* vs. *Whitney,* 10 *Mass.* 316 ; *Mowry* vs. *Todd,* 12 *Mass.* 281 ; *Usher* vs. *D'Wolfe & al.* 13 *Mass.* 290 ; *Jones* vs. *Witter, do.* 304 ; *Skinner* vs. *Somes,* 14 *Mass.* 107 ; *Coolidge* vs. *Ruggles,* 15 *Mass.* 387.

But, as it has been remarked, where a proposition is made which is executory in its character, it undoubtedly should be complied with within a reasonable time, in order to bind the party making it ; and it becomes necessary to determine in this case whether the proposition made was accepted with-

in such time. What is a reasonable time within which an act is to be performed, when a contract is silent upon the subject, is a question of law, and must depend on the situation of the parties and the subject matter of the contract. 1 *Com. Con.* 3, 4; 1 *Roll. Abr.* 14 *l* 50; *Tucker* vs. *Maxwell*, 11 *Mass.* 143; *Thompson* vs. *Ketcham*, 8 *Johns.* 189; *Atwood* vs. *Clark*, 2 *Green.* 249.

In this case, for aught that appears, there has been no change in the relative situation of the parties, so that the defendant is subject to any inconvenience in consequence of the delay in meeting his proposition. The defendant has not paid the debt, nor discharged the bond which was outstanding against him, and he admits, by his own disclosure in another action, which is filed as evidence in this case, that he had and still has, funds of Whitmore in his hands, reserved expressly for the payment of the claims now in suit. The necessary measures, also, to procure an assignment of these claims, under the circumstances of this case, are such as would justify a very considerable delay. It is uncertain, from the testimony, whether this delay was something less than one, or nearly two years. This is a long time, but the nature of the contract is such, it being merely the shifting of payment of an acknowledged debt from one individual to another, and nothing being suggested as to any change in the situation of the parties, whereby the defendant would be prejudiced; a compliance, also, necessarily requiring much time, and the proposition being made unlimited as to time, when it would seem to have been limited had it been holden essential, induce us to believe that the delay may be regarded as not unreasonable, and that the evidence sustains, in this respect, such an acceptance and compliance with the proposition as to make the contract binding.

Admitting this to be the case, the question remains to be considered, whether it has been duly complied with in the proper procurance of the assignments. It is essential to this defendant, that the strict rules of law to constitute a valid

assignment be enforced ; for it is apparent that a judgment in this suit would be no bar to any future claim on the part of the original creditors, should the assignment hereafter be proved defective.

Waiving, for the present, the objection that the bond assigned is not produced, we shall consider the objection taken to the assignment of the claim of S. & L. Pulsifer, which is, that the deed was executed by S. Pulsifer alone.

It must be considered as settled, that each partner has the entire control of the personal estate of the partnership, and may adjust, receive payment, and release a debt.

In this case the assignment is under seal, and the doctrine that one partner cannot bind another by deed has been supposed to apply. *Harrison* vs. *Jackson*, 7 *Term Rep.* 207 ; *Clement* vs. *Brush*, 3 *Johns. Ca.* 180 ; *Thomason* vs. *Frere*, 10 *East* 418 ; *Gerard* vs. *Basse & al.*, 1 *Dal.* 119. But although one partner cannot, by deed, bring any fresh burthen upon his co-partner, he may by deed bar him of a right which they possess jointly ; and where there is a promise to several jointly, or there are several joint obligees, or covenantees, a release by one binds all. *Co. Lit.* 232 *a ;* *Tooker's case*, 2 *Rep.* 68 ; *Bacon's Ab. Title Release ; Com. Dig. Title Release ;* 4 *B. Moore* 194 ; *Perry* vs. *Jackson*, 4 *Term Rep.* 516 ; *Pierson* vs. *Hooker*, 3 *Johns.* 68 ; *Bulkley & al.* vs. *Dayton & al.* 14 *Johns.* 387 ; *Bruen* vs. *Marquand*, 17 *Johns.* 58 ; *Hodges* vs. *Harris*, 6 *Pick.* 360.

The assignment of S. Pulsifer, by deed, purports to convey all his right, and all the right of S. & L. Pulsifer, to any claims against Gordon Whitmore, or Josiah Bellows, by bond or otherwise ; and such an assignment may be legally made, and passes the whole interest of the firm.

Another exception taken is, that the assignment by C. Churchill, reciting that he was a surviving partner of the firm of C. & D. Churchill, was without legal effect, because it was not shown that the other partner was dead, and he thus had a right to act.

But whether the partnership be dissolved or not, one partner may release a debt, and he may do this even where by the dissolution all debts were assigned to the other partner. *King* vs. *Smith,* 4 *Car. & Pay.* 108 ; *Stead & als.* vs. *Salt,* 3 *Bing.* 101. A partner cannot, after the dissolution of the partnership, endorse a note payable to the firm so as to pass the interest in it. *Wrightson* vs. *Pullan,* 1 *Stra. Rep.* 375 ; *Moody* vs. *King,* 2 *Barn. & Cres.* 558 ; *Hackley* vs. *Patrick,* 3 *Johns.* 538 ; *Sandford* vs. *Mickles,* 4 *Johns.* 224. But the reason of this is, that if he could endorse the note he might bind the firm as endorsees, which he cannot do. This objection does not exist in the assignment of a bond, and there seems to be no reason why one partner may not assign a bond after the partnership is dissolved. It is immaterial in this case, as to the legal effect of the assignment, whether the partner is dead, or still survives ; it would be good in either case.

A farther exception taken is, that the assignment by Samuel Cooper, as administrator of William Cooper, was improperly admitted, as there was no competent evidence of his appointment as administrator. The only proof offered, was a certificate from the register of probate. But a certificate of a register of probate is not evidence of a grant of letters of administration. If a record of the grant is kept, a copy of that record is the proper evidence. 1 *Stark. Ev.* 248 ; *Gorton & al.* vs. *Dyson,* 1 *Brod. & Bing.* 219 ; *King* vs. *Barnes,* 1 *Stark. Rep.* 243 ; *Davis* vs. *Williams,* 13 *East* 232. If no record is kept, the register is no certifying officer. In this case, the register not only certifies that Cooper was administrator, but that Samuel Gill was joint administrator with him, and that Gill is dead. If both administrators, if living, should join in the assignment, a certificate of the death of one of them would not be legal evidence. A certificate in either respect is incompetent evidence.

Another exception is, that the debt of William C. Hall, and his interest in the bond referred to, is assigned by

Cooper and Carrington, who allege themselves, in their deed, to be assignees of said Hall. But their authority as assignees is denied, and the recital in their deed is no evidence against this defendant. A recital in a deed is not evidence against any one who does not execute the deed ; it is only evidence of the admission of a party. 2 *Stark. Ev.* 22, 23. The authority of Cooper and Carrington as assignees, should be affirmatively shown, which is not done.

An exception is also taken on account of the non-production of the bond alleged to be assigned, which is an important consideration in this case.

A bond may be assigned by deed, or other writing, or without writing, so as to give the assignee a right to receive the debt, to release it, or to sue in the name of the obligee ; but in general, the instrument itself should be delivered to the assignee. 1 *Mass.* 117, *Perkins* vs. *Parker ;* 4 *Mass.* 450, *Foster* vs. *Sinkler & trustee ;* 13 *Mass.* 304, *Jones* vs. *Witter ;* 15 *Mass.* 481, *Dunn* vs. *Snell & al. ;* 2 *Green.* 322, *Vose* vs. *Handy ;* 11 *Johns.* 47, *Raymond* vs. *Squire ;* 12 *Johns.* 346, *Canfield* vs. *Monger ;* 17 *Johns.* 284, *Prescott* vs. *Hull.*

When a demand is made of the maker of a note, the note itself should be produced, otherwise the debtor may well refuse to pay, on the ground that he has a right to have his obligation or contract, or to see it cancelled when he is called upon to discharge it. 1 *N. H. Rep.* 80, *Tredick* vs. *Wendell ;* 7 *Mass.* 483, *Freeman* vs. *Boynton ;* 13 *Mass.* 557, *Woodbridge & al.* vs. *Brigham ;* 6 *Mass.* 524, *Berkshire Bank* vs. *Jones ;* 7 *Cranch* 275, *Morgan* vs. *Reintzel ;* 2 *Camp.* 211, *Pierson* vs. *Hutchinson ;* 3 *Cowen* 303, *Rowley* vs. *Ball ;* 4 *Taun.* 602, *Davis* vs. *Todd ;* 2 *Gallis.* 351, *Peabody* vs. *Denton.*

A contract like this, where a proposition on a certain consideration was made to another to procure the assignment of an instrument, cannot be considered as fulfilled unless the instrument itself be produced. The condition on which the

promise of the defendant was made, as alleged in the declaration, "*is an assignment to the plaintiff of the deed.*" This implies a delivery ; and the evidence of its procurement, prior to a recovery in any suit for the consideration of the assignment, is essential. An assignment of the debt is no assignment of the deed ; it would not appear, from such assignment, but the deed had been previously assigned, and was outstanding against the defendant.

The contract of the defendant may be considered a contract to pay, if the bond is produced and an authority to receive payment is shown, or if it has been duly assigned, and delivered, and its non-production is accounted for by loss from time, accident, or other cause. It is not enough, under this contract, to show a loss of the bond merely ; it must be shown to have been lost after delivery to the plaintiff.

As the bond has not been produced, nor its loss shown subsequently to the assignment, the plaintiff fails in sustaining his claim on his special counts, and for this, as also for the other reasons named, the verdict cannot be sustained, and the case must be set aside, and transferred, unless the parties agree on a judgment for the amount of the note declared on in the first count.

*Verdict set aside.*