# SUPREME JUDICIAL COURT.

#### IN THE

## COUNTY OF BARNSTABLE, OCTOBER TERM, 1813, AT BARNSTABLE.

———◆———

PRESENT:

Hon. SAMUEL SEWALL,  
Hon. GEORGE THATCHER, } Justices.  
Hon. CHARLES JACKSON,

———◆———

## EDMUND CROCKER AND DEBORAH, HIS WIFE, *versus* DANIEL WHITNEY.

An assignment by A to B of a sum of money due from C to A, an assent, on the part of C, and an express promise by him to B to pay accordingly, is sufficient to maintain *assumpsit* by B against C. Although the sum due from C to A be an unliquidated balance of account, if the promise be to pay what shall appear to be due, so, if the assignment be of a sum to become due to A at a future day, C is liable when the money falls due. Such assignment may be effected by a verbal agreement, without writing.

A supercargo of a ship promises to pay a sum of money to a creditor of a seaman shipped for a voyage, "if there should be so much due to him from the ship:" after a verdict for the promisee, it was holden, that these words expressed merely a limitation of the extent of the undertaking, and not a condition precedent to the performance of it.

THE declaration was in case, and contained five several counts. In the first count, the plaintiffs allege " that one *Isaac Head,* on the 10th day of September, 1804, being indebted to the said *Deborah.*

316

CROCKER & UX *vs.* WHITNEY

then sole, in the sum of 188 dollars 85 cents, gave her a promissory note for that sum, payable on demand with interest, which note is still unpaid ; that the said *Head* was then a seaman on board the ship *Favorite,* of which the defendant, *Whitney,* was supercargo, bound on a voyage from *Nantucket* to the *East Indies* and back to *Nantucket;* and that the defendant *at [ *317 ] the same time, *at the special instance and request of Head,* by a memorandum on said note, signed by the defendant, promised the said *Deborah* to pay the said sum, if *Head* should have so much on board said ship on her return to *Nantucket,* which means, (as the plaintiffs aver,) if there should be so much then due to *Head* from said ship. The plaintiffs then aver the return of the ship to *Nantucket,* and that there was at that time a sum equal to the amount of said note due from said ship to *Head,* " whereby the defendant became liable to pay the said sum, and in considera- tion thereof then and there promised to pay the same."

The other counts were on notes made by other seamen on board the same ship, substantially like the first ; excepting that in the two last the agreement or promise of the defendant was not made until September, 1807, after the ship's return to *Nantucket,* and were to avail the promisee, if the seamen respectively had so much due them from said ship.

The action was originally tried on the general issue, and a ver dict found for the plaintiffs ; on the three first counts for sums less than the amount due on the notes therein set forth, but being, as the verdict states, for the balances due to the several seamen from the defendant and interest ; on the two last counts the verdict was for the whole amount. Upon a second trial had upon a review brought by the defendant, a like verdict was returned.

The defendant moved in arrest of judgment on two grounds : 1. Because no consideration for the collateral promise and undertak- ing of the defendant is set forth in the declaration. 2. Because the promise, as stated, is conditional, *viz.,* to pay only in case of the seaman's having enough due to him to discharge the whole debt in each case ; and the verdict shows, as to the three first counts, that this was not the case.

*Sproat* for the plaintiffs.

*B. Whitman* for the defendant.

* The action being continued *nisi* for advisement, judg- [ *318 ] ment was rendered for the plaintiffs at the succeeding March term, in *Suffolk.*

JACKSON, J. The declaration in this case is extremely imperfect in many particulars ; and notwithstanding the disposition of the Court to render judgment for the plaintiffs, after two verdicts in their favor

on the merits, still, if there be any material defect, not aided by the verdict, the judgment must be arrested.

If the only consideration be a supposed forbearance of the plaintiff to sue his debtor, on which ground it seemed to be placed in the argument, and on which the pleader who drew the declaration probably relied, it seems very clear that the action cannot be maintained. Such a declaration should regularly show a right of action in the plaintiff, a person liable to be sued on that right of action, and a forbearance or suspension of the right by the plaintiff at the request of the defendant.

It is true that an omission of some of these particulars may be cured by a verdict for the plaintiff; as if he avers a forbearance to sue generally, or without specifying any person who was liable, and who was the object of the forbearance : this would be ill on special demurrer ; but the verdict may aid the defect, inasmuch as the jury could not have found that the plaintiff did forbear to sue, unless they had found some one who was liable to his suit. (1) So, perhaps, if he had stated an agreement or promise to forbear, but had omitted to aver that he had forborne accordingly, this omission might be cured by the verdict, upon the authority of the case in Lord *Raymond*, 1060, which was cited for the plaintiff.

But, in the declaration before us, there is no averment that the defendant requested the plaintiff to forbear, nor that she did forbear, or agree so to do, at the request of the defendant ; nor are these facts, or either of them, necessarily involved in the verdict which the jury have rendered. The plaintiffs have, indeed, [ * **319** ] stated certain facts, * which render it highly probable that this was the truth of the case ; but this is only displaying the evidence on the record, instead of averring the facts which that evidence is calculated to prove.

The Court, however, are not confined to this view of the case, even if it is that on which the plaintiffs chiefly relied. If, on examining the declaration, aided as it is by the verdict, we can find a legal cause of action substantially set forth, we are bound to render judgment upon it for the plaintiffs. We have accordingly considered the facts in this case as showing an assignment to the plaintiffs by *Head*, and the other original debtors respectively, of so much of their money in the defendant's hands ; an assent thereto by the defendant, and a promise by him to the plaintiffs to pay the same to them accordingly. The general principle has been long well settled, that such an assignment, with notice to the defendant, imposes on him an equitable and moral obligation to pay the money to the assignee ;

(1) 4 *East*, 455, *Jones* vs. *Ashburnham*

and although such an obligation is not sufficient to support an implied *assumpsit,* so as to enable the assignee to maintain an action in his own name, yet it is a good consideration for an express promise to that effect. (2) It is no objection to such an assignment, that it is of an unliquidated balance of account. If the defendant promises to pay what shall appear to be due from him, he is liable for the amount when ascertained. (3) Nor does it make any difference, if, instead of a debt now due, the assignment is of money which is expected to become due at a future day to the assignor. When the contingency happens, and the money is due, the debtor is liable for the amount on his promise to the assignee. (4)

The first question, then, is, whether this declaration sets forth a sufficient assignment by *Head* and the other seamen of their money in the defendant's hands. No precise form seems required for this purpose. In the cases cited, it was by an order or request in writing. But there appears to be no reason why it may not be as well effected * by a verbal request or agreement. (5)  [ * **320** ] If, however, a written order were necessary for this purpose, we are bound to presume, after verdict, that it was so proved at the trial. The plaintiff avers that this agreement or promise of the defendant was made " at the special instance and request of *Head ;* " and the jury could not have found this to be true, unless it was proved before them by legal evidence.

Another and more difficult question is, whether it sufficiently appears, on this declaration, that the defendant ever was indebted to *Head* and the other seamen, or had any of their money or effects in his hands. We must here resort to the verdict, to cure the palpable defects of the declaration, in this particular. The defendant's character, as supercargo of the ship, would not make him, of course, a debtor to *Head* for effects which the latter might have on board. *Head* might have shipped goods on board on his own account, consigned to himself or to any stranger, with which the supercargo would have no concern.

To obviate this difficulty, the plaintiff has resorted to an *innuendo,* such as is used in actions of slander, to give an explanation of the words used by the defendant. This is a very irregular and unnecessary mode of giving a construction to a written contract. If the words used in the contract are not adapted to the technical statement of the case in a declaration, the plaintiff should declare on them

(2) 6 *Mass. Rep.* 43, *Andover,* &c., *Turnpike* vs. *Gould*   *Cowp.* 290 *Hawkes vs.
Saunders.*
(3) 1 *H. Black.* 239, *Israel* vs. *Douglas & Al.*
(4) *Clarke* vs. *Adai,* cited 4 *D. & E.* 343.
(5) Vide 3 *D. & E.* 180, the case put by *Buller,* J

according to their legal meaning and operation. If they do mean what the plaintiff surmises, the paper, when produced in evidence, will support his declaration; if not, an *innuendo* will not avail him.

But if we adopt this construction, and suppose the words to mean, "if there should be so much due to *Head* from the ship," still it would not follow that the defendant was indebted to *Head* in that sum. A supercargo, as such, has not generally any concern with the seamen, nor with the payment of their wages. On the other hand, it is well known that some *East India* voyages are [ *321 ] begun by * taking seal-skins in the Southern Ocean, or by other similar adventures, in order to procure a cargo for the *China* or *India* market; and in such cases the seamen, in stead of receiving monthly wages, are paid at the termination of the voyage by receiving a certain proportion of the homeward cargo, or of its proceeds. On such a voyage, the supercargo may be the agent of the seamen, as to their respective shares, as he is of all other persons interested in the cargo; and in this manner he may have in his hands, at the termination of the voyage, whatever is due to the seamen for their services on board the ship. We cannot now inquire whether this was the truth of the case as proved on the trial. But when we consider all the circumstances of the case, — that the defendant, by his original undertaking, seems to suppose and admit that whatever should be on board the ship, belonging or due to the seamen, would be in his hands, and to be paid by him; that the jury, as to three of the counts, have awarded less than the sums due to the plaintiffs from the original debtors, thereby manifestly limiting the defendant's liability to the sums which appeared due to the seamen respectively; and, finally, that two successive juries have found verdicts for the plaintiffs, — it may not be too much to presume that it appeared, on the trials, that, in the manner before suggested, or in some other way, the money due to *Head* and the other seamen from the ship was in the hands of the defendant, and payable by him; and, of course, that, on payment of the money recovered in this action, he will be discharged *pro tanto*, as against those seamen. This construction of the declaration and the verdict is not entirely free from doubt; but the Court, on the whole, are inclined to adopt it, and to order judgment for the plaintiffs according to the verdict.

As to the second objection suggested by the defendant's counsel, that the promise is conditional, we are all of opinion that, [ *322 ] on a fair construction of the words, especially * after a verdict, they express merely a limitation of the extent of the defendant's undertaking, and not a condition precedent to the performance of it. It is not a promise to pay the plaintiff's debt, on condition only of his having enough in his hands to pay the

whole, but a promise to pay to the extent of what he may have in his hands, not making himself liable for the residue, if the fund should prove insufficient. (a)

*Judgment on the verdict.*

(a) [In reading this case, one is reminded of the saying of Mr. Justice *Buller,* " Hard cases make shipwreck of the law." Clearly there was, as it seems to us, no shadow of a consideration for the undertaking of the defendant set forth in the declaration; and, for this reason, it would seem judgment should have been arrested. — See *Tenny* vs. *Prince,* 4 *Pick.* 385. — *Powell* vs. *Brown,* 3 *Johns. Rep.* 100; and cases in note to *Lent* vs. *Padelford,* ante, p. 236. — The promise set forth, too, was apparently on a contingent condition, which, it seems, never happened.

As to the case of *Israel* vs. *Douglas & Al*, (1 *H. Bl.* 239,) on which the learned judge founds his argument, the authority of it, though recognized by Lord *Ellenborough,* in *Williams* vs. *Everett,* (14 *East,* 587, note,) was doubted by *Lawrence,* J., in *Taylor* vs. *Heggins,* (3 *East,* 171 ;) and it can now only be considered as law with certain qualifications. Where A is indebted to B, and B to C, in the same sum, and it is agreed amongst all the parties that A shall pay C, C cannot sue A, unless by the agreement he relinquishes his action against B ; for, should he still retain his right of suing B, there would be no consideration for A's promise to pay him, C, since there would be no loss to the plaintiff, or benefit to the defendant. — *Cuxon* vs. *Chadley,* 3 *Barn. & Cres.* 591. — *Wharton* vs. *Walker,* 4 *B. & C.* 163. — *Tatlock* vs. *Harris,* per *Buller,* J., 3 *D. & E.* 180. — *Hodgson* vs. *Anderson,* 3 *B. & C.* 855. — 5 *D. & R.* 735. — *Wilson* vs. *Coupland,* 5 *B. & Ald.* 228. — 2 *Phil. Ev.* 7th ed. 117. — In *Wharton* vs. *Walker,* *Bayley,* J., said, " If, by an agreement between the three parties, the plaintiff had undertaken to look to the defendant, and not to his original debtor, that would have been binding, and the plaintiff might have maintained an action on the agreement ; but, in order to give him that right of action, there must be an extinguishment of the intermediate debt." This debt cannot be extinguished unless there be a communication between all parties and an express agreement by the plaintiff to accept the defendant only as his debtor. — *Cuxon* vs. *Chadley ; Wharton* vs. *Walker* ubi sup. — See *Spratt* vs. *Hobhouse,* 4 *Bing.* 178. — *Hennings* vs. *Rothschild,* 4 *Bing* 315. — Where, however, by agreement between all the parties, the debt due from A to B is assigned to C, to secure the payment of a smaller debt due from B to C ; and it is agreed that such moneys as C shall receive from A, through his agent, upon A's debt, shall be applied in payment of the debt of B, and be *pro tanto* a discharge of the debt of A, — such an agreement is obligatory on the parties ; the agreement to forbear to sue B being a sufficient consideration moving from C, and it being an agreement, on the part of A, only to pay his own debt to C, instead of B, there is a full consideration for his promise, and no writing on his part is necessary. — *Hodgson* vs. *Anderson,* ubi sup. — *Fisher* vs. *Miller,* 1 *Bing.* 150. — 7 *Moore,* 527. — *Robertson* vs. *Fontleroy,* 8 *Moore,* 10. — And a person cannot, in general, revoke an authority to his debtor to pay the debt to a third party, the creditor of the former, after the debtor has given a pledge to such third party that he will pay the money according to the authority. — *Hodgson* vs. *Anderson,* 3 *B. & C.* 842. — *Robertson* vs. *Fontleroy,* 8 *Moore,* 10. — But in the principal case, it is not stated that the supercargo was indebted to, or had property of, the seamen in his hands and under his control, nor that he acted herein as agent of the owners, nor that his owners, being indebted, or having such property, knew and assented to the transaction. It appears, from the declaration, to have been a naked promise, without consideration, on the part of the supercargo, to pay on the happening of a contingency, with which he had no concern whatever. — See *Crowell Hatch & Al.* vs. *P. C. Brooks,* 2 *Mass. Rep.* 293. — *Tucker* vs. *Welsh,* 17 *Mass. Rep.* 169. — ED.]

---

ADDITIONAL NOTE.

[The equitable assignee of a note signed by two persons, one of whom promises to pay it, cannot sue both in his own name. — *M'Coon* vs. *Biggs,* 2 *Hill,* 121.
Nor is the mere consent of the defendant to the assignment sufficient to give the

assignee a right of action in his own name. — *Jessel* vs. *The Williamsburgh*, &c., 3 *Hill*, 88.

Where a debtor promises the assignee of a claim against him to pay it, in a suit upon such promise, the plaintiff need not prove that the assignment was made for valuable consideration. — *Norris* vs. *Hall*, 6 *Shepl.* 332.

If such proof were necessary, the deed of assignment, acknowledging receipt of the consideration, would be sufficient. — *Ibid.*

See *Muir* vs. *Schenck*, 3 *Hill*, 228. — *Barger* vs. *Collins*, 7 *Har. & J.* 213. — *Bucklin* vs. *Ward*, 7 *Verm.* 195. — *Lang* vs. *Fiske*, 2 *Fairf.* 385. — **F. H.**]