Putnam, J.,
delivered the opinion of the Court.
The plaintiff’s intestate having delivered the goods and earned the freight, the burden rests on the defendant to show why the plaintiff ought not to recover. His defence, in substance, is, that Abbot, being in London before the ship sailed on her return voyage, and desirous of anticipating the money that would be due for the freight on the delivery of the goods in the United States, procured an advance to be made to him by Mr. Bromfield, of London, to the full amount of the same ; and, from the account settled at that time, it appears, that Abbot allowed to Mr. Bromfield the premium of insurance upon the freight, and interest upon the amount to the time when it would probably become payable in the United States. And the defendant contends, that the bill of exchange, having been accepted and paid, is a discharge of the debt for the freight ; or that, if the draft was not good as a bill of exchange, that it ought to avail as an assignment of the freight-money ; and that, in either event, the plaintiff ought not to prevail.
On the part of the plaintiff it is insisted, that, when /he bill was *185 drawn, no debt existed, and none could be assigned ; that it accrued to Abbot on the delivery of the goods in the United States; that Abbot's death was a revocation ; and that the acceptance afterwards ought not to prejudice the claim of the plaintiff any more than an acceptance of the draft of a bankrupt after knowledge of the bankruptcy.
We are therefpre to determine, whether the money due for this freight belongs to the plaintiff, to be distributed among the creditors of his intestate, his estate being insolvent; or whether Bromfield, for whose benefit this defence is made, is entitled to it, the defendant having paid the amount to the indorsee of Bromfield in consequence of an indemnity, and being in effect a stake-holder.
* Considering that Abbot received the amount of the [*210] freight from Bromfield, in London, and there invested the same for his own account, and that the proceeds make a part of the estate of the deceased, it would be difficult for the administrator to establish an equitable claim ; because, if he should recover, the estate will twice receive the money, and the foreign merchant, who made the advance to the intestate, will be obliged to accept a dividend under an insolvency, instead of the whole sum intended to have been paid.
The cases, cited for the plaintiff, to show that the death of the drawer is a revocation of the order on the drawee to pay, do not warrant the position. In the case first cited of Vernon & al. vs. Hankey, (1) the draft was made after the act of bankruptcy, and the defendant paid, knowing that fact. In the next, Bradley & al. vs. Clarke, (2) the payment was made to a bankrupt after his bankruptcy, and was not protected. To make these cases like the present, the bills should have been drawn before the bankruptcy, and delivered to the payee for a valuable consideration ; in which case the bankruptcy would be no revocation of the draft. Thus in Pasmore vs. North, (3) the payee indorsed the bill, and died afterwards on the same day ; it was holden, that the indorsee might make a title through such indorsement, and recover of the drawee.
Upon the delivery of a bill of exchange to the payee, the lia bility of the drawer becomes complete, if the holder is guilty of no loches. (4)
Some writers have holden, that, where the indorsement was intended as a mere authority to enable one to receive the money for the use of the indorser, the death of the indorser should operate as a revocation of the authority. But the law is clearly otherwise, where the authority is coupled with an interest; and, in such case, *186 the death of the drawer will not be a revocation of the request on the drawee to accept. So it has been determined by this Court, (5) that the death of the assignor does not defeat the assignment ; but the assignee may use the name of the executor or administrator of the assignor, to recover the money.
[*211] * But it is not necessary to determine, whether this draft is good as a bill of exchange within the custom of merchants, because we are all of opinion that it may be considered as an assignment of the money that might become due for the freight. It is expressed to be for the amount of freight and primage of the defendant’s goods to his consignment in the ship Rebecca, bound from London to Boston. The case of Clarke vs. Adair, cited by Buller, J., in his excellent árgument in Master vs. Miller, (6) is very much like this at bar, where Debray, an officer, drew a bill on an agent of a regiment, payable out of the first money that should become due to him on account of arrears or non-effective money. The drawee would not accept absolutely, but said he would pay when effects came to hand. Debray died before the bill was paid ; and his administrator brought an action to recover the money. It was allowed by all the parties, that the draft was not a bill of exchange within the custom of merchants. But Lord Mansfield held it as an assignment for valuable consideration, with notice to the agent, and that he was bound to pay it.
It has been urged by the plaintiff, in the case at bar, that, when Abbot made the draft, he had nothing to assign but a bare possibility, which is not assignable.
But, in the case just cited, the assignment was of money that might become due. It does not appear that any thing was then due. Yet the death of Debray was not deemed a revocation. The acceptance there, as in the case at bar, was conditional, and not absolute. And there the assignee was protected against the suit of the administrator of the drawer.
The subject of the assignment of choses in action has been often under the consideration of the courts in England as well as in the United States; and it seems clear, at this day, that the assignee is to be considered, in law as well as in equity, as the party beneficially interested, subject, indeed, to the legal claim of the debtor, but free from the claims of the assignor, his executors, or adminis[*212] trators. And *in the case of Crocker fy ux. vs. Whitney, (7) this Court decided, that it makes no difference, if, instead of a debt now due, it is of money expected to become due at some future time to the assignor, it appearing that there was an existing contract upon which the debt might arise.
*187 This might have been a sufficient answer for the discharge of the defendant, if Dorr had pursued his process upon the former attachment. And the Court will protect the assignee against the subsequent release, or other acts of the assignor, tending to defeat the rights of the assignee.
It has also been contended for the plaintiff, that the supposed assignment, in the case at bar, was not good, because not under seal. But it was settled by this Court, in the case of Quiner vs. The Marblehead Social Insurance Company, (8) that a seal, in such a case, was not necessary to a valid assignment of an equitable interest in the stock of that company.
There is no suggestion, in the case at bar, that Mr. Bromfield has not acted fairly. He advanced the amount of this freight to Abbot upon the faith, that, if the goods were delivered in the United States, the money for the freight and primage was to be paid to him. It has been paid to his agent, Mr. Rogers, who was duly authorized to receive it; and we are all of opinion, that, in law as well as in justice and equity, he is entitled to hold it. According to the agreement of the parties, therefore, let judgment in this action be entered as on a verdict for the defendant.

 2 D. & E. 113.

 5 D. & E. 197.

 13 East, 516.

 Chitty on Bills, 86, 2d London edition

 Dawes, J., vs. Boylston, 9 Mass. Rep. 337

 4 D. & E. 343.

 10 Mass. Rep. 319.

 10 Mass. Rep. 476. See also Wood vs. Partridge, 11 Mass. Rep. 491.