## Gorham Gibson *versus* Josiah P. Cooke.

An order or draft for a part only of the debt due from the drawee to the drawer, does not, against the consent of the drawee, amount to an assignment, for the debtor is not to be subjected to distinct demands on the part of several persons, when his contract was one and entire.

Thus, where a person entitled to quarterly payments from a trustee, drew an order on the trustee to pay to a creditor, "as the drawer's income should become due," a certain sum which did not correspond precisely in amount with one or any number of the sums payable to the drawer, and the drawee refused to accept the order, it was *held*, that the order was not an assignment, and that the payee could not maintain an action against the drawee in the name of the drawer.

This was an action of assumpsit, brought in the name of Gibson, but for the benefit of Shepherd Plympton, to recover the amount of a draft, dated New York, October 23, 1832, in which, for value received, Gibson requests the defendant to pay to Plympton or order $175·33, " as my income becomes due."

Upon a case stated it appeared, that the draft was presented to the defendant on October 26, 1832, but that he refused to accept it, on the ground that the fund referred to could not be assigned or pledged for the debts of the drawer, but was devised to the defendant on a personal trust that it should be paid to Gibson personally, and applied solely to his maintenance. His habits were such as required great prudence in the disbursing of money to him, and he was often in a state of suffering and want by reason of his improvidence.

The fund was created by the following clause in the will of Susan Gibson, Gorham's mother : — " The residue and remainder of my estate, both real, personal and mixed, &c. I do give, devise and bequeath to Josiah P. Cooke, Esquire, to have and to hold to him, &c. to and for the following uses, trusts and purposes, and none other, that is to say, in trust to collect and receive from time to time the rents, issues and income of my said estate, &c., then to pay over and divide equally the net proceeds once a quarter to and among my said children, (naming Gorham and six others,) for and during the terms of their natural lives." The will further provides, that on the decease of any child, his share shall go

to his issue, if any, otherwise to the surviving children and the issue of any deceased child ; and that no part of the real estate shall be sold, unless to pay legacies, so long as any of the children shall be living ; and that at the decease of the last survivor of them, the same shall be equally divided among their legal heirs and representatives.

The will was proved May 11, 1829. The defendant was appointed sole executor and trustee, and took upon himself both trusts. He has, according to the provisions of the will, stated his account of the rents and income, quarterly, and passed one seventh part thereof to the credit of Gorham Gibson, his share being on an average about 150 dollars a year. This has been paid to him personally, or applied to his maintenance. The last settlement made with him is dated August 20, 1835. Since the first presentation of the draft the sum of $479·49 has been in this way passed to the credit of Gorham Gibson, and paid over and applied by the defendant as above mentioned.

The draft was a second time presented to the defendant on October 17, 1835, and notice was given him to retain funds sufficient to meet it.

On March 16, 1836, the draft was again presented, and on March 19th this suit was commenced. At that time the defendant had in his hands a balance of $46·63 due to Gibson.

Plympton's power to prosecute the suit was duly called for, and it was admitted that he had no other authority than what was implied from his being the holder of the draft.

*June 30th, 1837.*    *Aylwin* and *Paine*, for the plaintiff, contended that the draft was an equitable assignment of funds which should subsequently come into the hands of the drawee, to the amount of the draft. *Dix* v. *Cobb*, 4 Mass. R. 510 ; *Crocker* v. *Whitney*, 10 Mass. R. 316 ; *Jones* v. *Witter,* 13 Mass R. 304 ; 2 Story on Equity, § 1040 to 1057.

*Cooke, pro se, cited Picquet* v. *Swan*, 4 Mason, 463.

*March 12th, 1838.*    DEWEY J. delivered the opinion of the Court. Is the draft in question an equitable assignment of any funds of Gorham Gibson in the hands of the defendant, and available as such for the benefit of Plympton ?

The doctrine of equitable assignments has been gradually extending to meet the convenience of trade and business, and has been favorably viewed in the courts of law, subject however to the legal principle, that in such cases the assignee can enforce his claim only in the name of the assignor, unless there be an express promise by the debtor to pay the assignee. Under this limitation, choses in action generally may be the subject of an assignment; and debts which are contingent and money yet to become due, may well be assigned, these circumstances only operating to postpone the liability of the debtor until the contingency happens and the money becomes payable.

It seems also to be equally well settled, that a draft by the creditor on his debtor in the form of a bill of exchange, to the amount of the debt or the whole fund in his hands, is a good and valid assignment of the debt, or fund. *Crocker* v. *Whitney*, 10 Mass. R. 318; *Clarke* v. *Adair*, cited in *Master* v. *Miller*, 4 T. R. 343; *Cutts* v. *Perkins*, 12 Mass. R. 209; *Robbins* v. *Bacon*, 3 Greenleaf, 346.

But the defendant insists that his liabilities to the assignor were not of such a nature as to authorize the assignment of them by Gibson. He claims that the funds of the assignor were placed in his hands as a personal trust, to be applied by him directly to the support and maintenance of Gibson.

Upon examining the will of Susan Gibson, the devise under which the defendant holds these funds appears to be a general one, to him as residuary devisee of all the estate, real, personal and mixed, of the testatrix, to hold in trust, to collect and receive the income thereof, and to pay over and divide equally the net proceeds thereof, once a quarter, to and among her seven children, of whom Gorham Gibson was one.

It would, we apprehend, be somewhat difficult to sustain the position, that this was a personal trust, to be exercised in any degree at the discretion of the trustee as to the time and mode of payment. The direction in the will is, that the income be divided equally among the children, and paid over once a quarter. There are no saving clauses, nor any allusion to the alleged bad habits of Gorham Gibson. His

Gibson v. Cooke.

Gibson
*v.*
Cooke.

rights are, by the terms of the will, precisely the same as those of each of his brothers and sisters, and for any thing that appears, he may enforce them in the same manner. It is unnecessary however to express any decided opinion on this point, because upon another ground the defence is clearly sustained.

As regards the defendant, it is to be remembered the whole proceeding is *in invitum*, he not having accepted the draft, nor having been in any way instrumental in its creation, and there being no privity between him and the payee Plympton, except such as the law creates between one holding funds as a debtor or trustee, and a person to whom the creditor or *cestui que trust* may have assigned. The defendant is therefore fully authorized to resist this demand, upon any valid objections to the legal operation of the alleged assignment.

We have before remarked that courts of law, while they protect unnegotiable choses in action in the hands of an assignee for a valuable consideration, do not give such force and effect to an assignment, not assented to by the debtor, as to authorize an action in the name of the assignee. Another rule adopted in courts of law having a direct bearing upon the present case, and which seems well sustained upon sound principle, as well as authority, is, that an order or draft for a part only of the debt or liability of the drawee does not, against his consent, amount to an assignment of any portion of the debt or liability, and does not authorize the institution of a suit in the name of the assignor for the whole, or any part of the sum due from the debtor. *Robbins* v. *Bacon*, before cited ; *Mandeville* v. *Welch*, 5 Wheat. 577.

The reason of this rule is the very obvious one, that a debtor is not to have his responsibilities so far varied from the terms of his original contract as to subject him to distinct demands on the part of several persons, when his contract was one and entire. While the equitable rights of an assignee can be enforced by one action, and that in the name of the original creditor, and for the whole amount due, but little if any hardship is imposed on the debtor ; but to extend this liability to an indefinite number of persons, for any

Gibson
v.
Cooke.

portion of the debt, or to authorize a suit to be instituted by one assignee for a part only of the debt, leaving the original creditor to enforce his claim for the residue in another suit, would be both unreasonable and oppressive.

To apply the rule to the case at bar, we must recur to the form of the draft upon the defendant. Gorham Gibson drew his bill of exchange for the sum of $175·33, " to be paid as my income becomes due." What were the funds in the hands of the defendant ? Gibson was entitled to one seventh part of the net income of the estate that passed to the defendant under the will of Susan Gibson, to be paid to him quarterly. The average quarterly amount, as appears by the statement of facts, would be about $37·50. It does not appear that at the time of the assignment, or at any period since, the whole amount due to Gorham Gibson would correspond with the amount of the draft. The liability of the defendant was limited to the payment of sums corresponding in amount with the net proceeds due at the expiration of each quarter. If he was liable to be called upon through the medium of an assignee holding a draft, that draft must be for the entire sum due, either at the expiration of one quarter or of several quarters united. Such does not appear to have been the case here. Any appropriation different from the rule above stated, and which would require a partial payment of the net proceeds of a quarter, is one which Gorham Gibson was not authorized to make, and which the law has not imposed on the defendant any liability to discharge.

*Plaintiff nonsuit.*