JOHN PARKHURST *versus* THOMAS DICKERSON *et al.*

Where, previously to the sailing of a whaling ship, a seaman drew an order in favor of the plaintiff, on the owners, for his *share* of the proceeds of the voyage, and the agent of the owners declined accepting it, but told the plaintiff, that he would take the order if the plaintiff wished, subject to his control, and on the return of the vessel, would, with the consent of the seaman, save it, or try to save it for him, and the plaintiff assented thereto, it was *held*, that this was not an acceptance of the order on the part of the owners ; and that the order probably was sufficient to transfer to the plaintiff an equitable interest in the drawer's share and to form a good consideration for a promise by the owners to pay it ; but that such promise could not be implied from these circumstances, and that no action could be main tained on such order in the name of the plaintiff against the owners.

ASSUMPSIT to recover of the owners of a whaling ship, called the Lemuel C. Richmond, the balance of the *lay* or share of Alfred Graham.

At the trial, before SHAW C. J., the plaintiff produced the following order, alleged to have been drawn by Graham on the defendants, and dated on the 28th of December, 1833 : "For value received, please pay to the order of John Parkhurst the proceeds of my voyage in the Lemuel C. Richmond her present intended voyage."

The defence was, that the defendants had never accepted the order, and had paid the balance to Graham himself.

It was agreed, that Graham sailed in the ship, and that there was a balance due to him, at the end of the voyage.

Kimball Perry, called as a witness by the defendants, testified that he was an agent of the vessel, and that previously to the sailing of the vessel the owners contracted with the plaintiff to procure seamen ; that he furnished the principal part of the crew, including Graham ; that the witness agreed to accept orders to be drawn in favor of the plaintiff, for the sum of $100 each, payable in six months ; that such order, including one drawn by Graham, were accordingly accepted and paid ; that when the order in question was presented, the witness declined accepting it, for three reasons, to wit, that it

*Parkhurst*
*v.*
*Dickerson.*

was not conformable to the agreement, that he did not like to hold a slave, or a man who had sold his whole voyage, and that the owners might be unable to hire other men ; that his idea was, that if the men deserted, the balance of oil should remain, to enable the master to ship other men ; that the witness told the plaintiff, that he would take the order, if the plaintiff wished, subject to his control, and on the return of the ship, they would, with the consent of the men, save it for him or try to save it for him ; that the plaintiff assented to this course ; that on the arrival of the ship, in 1837, the witness mentioned the order to Graham, and declined paying him any money until he had seen the plaintiff; that Graham denied having drawn such order and forbade the witness to pay it ; and that the witness took no measures to save the money for the plaintiff, because his agency had ceased and he could not.

In this stage of the cause a nonsuit was entered by agreement, subject to the opinion of the whole Court.

If, upon the evidence in the case, the Court should be of opinion that the plaintiff was entitled to recover, either as upon an acceptance, an assignment, or otherwise, the nonsuit was to be set aside, and a default entered ; otherwise, judgment was to be rendered on the nonsuit, for the defendants.

*Oct. 22d.*

*Warren* and *Clifford*, for the plaintiff, to the point, that the order was a *bonâ fide* assignment of the balance due to Graham, cited *Robbins* v. *Bacon*, 3 Greenl. 346 ; *Mandeville* v. *Welch*, 5 Wheat. 286 ; *Debesse* v. *Napier*, 1 M‘Cord, 106 ; to the point, that if there was any assent to such assignment on the part of the defendants, the plaintiff might maintain the action in his own name, *Scott* v. *Surman*, Willes, 402 ; *Austin* v. *Walsh*, 2 Mass. R. 405 ; *Hackett* v. *Martin*, 8 Greenl. 77 ; *Lang* v. *Fiske*, 2 Fairfield, 385 ; *Surtees* v. *Hubbard*, 4 Esp. R. 203 ; *Clark* v. *Adair*, cited in *Master* v. *Miller*, 4 T. R. 343 ; *Taylor* v. *Bates*, 5 Cowen, 376.

*Coffin* and *Battelle* and *E. Williams*, for the defendants, to the point, that where a conditional acceptance is made, it is not binding until the condition is performed, cited *Storer* v. *Logan*, 9 Mass. R. 55 ; *Grant* v. *Shaw*, 16 Mass. R. 341 , and to the point, that the plaintiff could not sue in his own name, as assignee of the balance due to Graham, w. hout the

assent of the defendants to the assignment, *Gibson* v. *Cooke*, 20 Pick. 15 ; *Taber* v. *Nye*, 12 Pick. 105 ; *Usher* v. *D'Wolf*, 13 Mass. R. 290 ; *Crocker* v. *Whitney*, 10 Mass. R. 316 ; *Mowry* v. *Todd*, 12 Mass. R. 281 ; *Greenby* v. *Wilcocks*, 2 Johns. R. 1.

<div style="float:right">Parkhurst<br>*v.*<br>Dickerson.</div>

MORTON J. delivered the opinion of the Court. In this action the plaintiff seeks to recover on an order, drawn in his favor, on the defendants, by one Graham, for his share of the proceeds of a whaling voyage in the defendants' ship.

<div style="float:right">*April term*<br>1839,<br>*in Bristol.*</div>

The first inquiry is, whether the defendants accepted the order declared on. It is manifest, that they did not. The evidence, as reported, shows a refusal to make an absolute acceptance ; and the strongest inference that can be drawn from it, is, that the acceptance was conditional. The agent of the owners having declined to accept the order, told the plaintiff he would take it, subject to his control, and when the ship returned, if the drawer consented, he would save it or try to save it for him. On the return of the ship, he applied to the drawer, who refused to give his consent to the payment, thus entirely defeating the conditional undertaking. *Grant* v. *Shaw*, 16 Mass. R. 341.

But although the order was not accepted, yet the plaintiff contends, that it was an assignment of the drawer's *lay* or share of the voyage ; that the defendants had notice of it, before they paid it over ; and that he can now maintain an action for it in his own name. If this doctrine be correct, then whenever the drawer has funds in the hands of the drawee, the payee may maintain an action against the latter, without a presentment or acceptance, and thus a debtor may have his liability transferred to a stranger without his consent, and when he has taken care not to give a negotiable security. It would in a great measure destroy the difference between negotiable paper and choses in action not legally transferable. There is no doubt that a debt or other chose in action may be assigned in equity, and that one of the incidents of the assignment will be a legal authority to use the assignor's name to enforce it. But we know of no authority or principle, which will support an action in the name of the assignee.

The order in this case, probably, was a sufficient assignment

Parkhurst
v.
Dickerson.

to transfer to the plaintiff an equitable interest in the drawer's share of the proceeds of the voyage in the defendants' hands, and to form a good consideration for an express promise. The assignment of a debt, either uncertain or liquidated, with notice to the debtor, may impose on him an equitable or moral obligation to pay the amount due to the assignee. But nothing is better settled, than that it will not raise an implied promise nor support an action in the name of the assignee. *Crocker* v. *Whitney*, 10 Mass. R. 316 ; *Mowry* v. *Todd*, 12 Mass. R. 281 ; *Usher* v. *D'Wolf*, 13 Mass. R. 290 ; *Gibson* v. *Cook*, 20 Pick. 18.

If there be an express promise to pay in this case, it is probably a valid one and may be enforced. But we have looked in vain for the evidence of it ; and without it the action cannot be sustained.

The nonsuit must stand and judgment be rendered for the defendants.