BENJAMIN F. RUSSELL & another *v.* GORHAM A. LELAND & others.

Making up a stock account of a firm, and ascertaining the amount of the interest of one partner and transferring it to the credit of another firm of which he was a member, will not dissolve the firm.

If a person belongs to two firms, and there is a balance due from one firm to the other, and he assents to a transfer of such balance by the latter firm to one of its creditors, and the transfer is accordingly entered by his directions upon the books of the former firm, and notice thereof given to the person to whom it has been transferred, this will be binding upon the former firm and render it liable to pay the amount to the assignee, although all the other members of the firm object to the transfer, as soon as they ascertain the facts.

CONTRACT against the surviving partners of the firm of Leland & Co. for money had and received to the plaintiffs' use.

At the trial in the superior court, before *Lord,* J., without a jury, it appeared that in 1861 and previously the firm of Leland & Co. was composed of Thomas J. Leland, since deceased, Gorham A. Leland, Thomas S. Leland, Henry Dunning, and Thomas M. Stockman. Dunning was also a member of a separate firm, under the name of Baldwin & Dunning. The plaintiffs were a firm doing business in Boston under the firm of Russell & Kimball.

A stock account had been made up by the firm of Leland & Co. the year previously, and the amount of Dunning's interest to his credit was transferred to the credit of Baldwin & Dunning.

Leland & Co. were engaged in packing pork at Muscatine, Iowa, for Baldwin & Dunning, and the accounts between the two firms were about balanced, when, in March 1861, Leland & Co. drew on Baldwin & Dunning for $1000. The latter borrowed the money of the plaintiffs. On the 12th of September 1861 Baldwin & Dunning, having failed and being unable to pay the plaintiffs, agreed with them that the amount to the credit of Baldwin & Dunning on the books of Leland & Co. should be transferred to the plaintiffs. In pursuance of this agreement, Baldwin & Dunning on that day addressed a letter to O. W. Brown, the clerk of Leland & Co. at Muscatine, having charge of their books there, which, after showing that they understood the balance to their credit to amount to $1,081.38,

contained the following : " In a settlement we have made with Russell & Kimball we have agreed to have this amount on your books transferred over to them; therefore you may charge our account with the amount due us, and give them credit for the same, and write us and give the amount, and also write Russell & Kimball and give them the amount." On the 16th of September Brown sent a reply to Baldwin & Dunning, stating that the balance was only $1,026.40, and that the transfer had been made as requested; and on the same day he also addressed a letter to Russell & Kimball informing them thereof.

None of the members of the firm of Leland & Co., except Dunning, had any knowledge of the agreement between Russell & Kimball and Baldwin & Dunning, or of the transfer of the account to Russell & Kimball, until about the 1st of October 1861, when they were informed by their clerk that the transfer had been made, but were not informed of the agreement between Russell & Kimball and Baldwin & Dunning. Immediately upon learning of this transfer all the members of the firm of Leland & Co., except Dunning, directed Brown, the clerk, by letter to re-transfer the account from the credit of Russell & Kimball to the credit of Baldwin & Dunning, and on the 12th of October 1861 Brown made the re-transfer, and notified Russell and Kimball and Baldwin & Dunning to that effect. The letter of Stockman, one of the firm of Leland & Co., to Brown, is referred to in the opinion.

The firms of Leland & Co. and Baldwin and Dunning were dissolved about the 1st of October 1861. Russell & Kimball never gave to Baldwin & Dunning any release from their indebtedness, in consideration of the transfer above referred to, ·ut it was taken by the former firm as being all they could obtain for their claim on Baldwin & Dunning.

The case was submitted to the court upon the above statement of facts, and the judge ruled, as matter of law, that the plaintiffs could not maintain their action; and the plaintiffs alleged exceptions.

*R. D. Smith & J. B. F. Thomas*, for the plaintiffs, cited *Carnegie* v. *Morrison*, 2 Met. 402, and cases there cited; *Robbins* v *Bacon*, 3 Greenl. 346.

Russell & another *v.* Leland & others.

*J. A. Loring*, for the defendants. The transfer of Dunning's interest in the firm of Leland & Co. was in effect an assignment of all his interest in that firm to a third party, and thereby that firm was dissolved. *Marquand* v. *New York Manufacturing Co.* 17 Johns. 525. *Ketcham* v. *Clark*, 6 Johns. 144. *Mumford* v. *McKay*, 8 Wend. 442. Dunning having ceased to be a member of that firm could not thereafter bind them by a contract with the plaintiffs. *Whitman* v. *Leonard*, 3 Pick. 177. Even if this is not so, the transfer to the plaintiffs gives them no cause of action against the defendants. If Dunning continued a partner, the amount of his interest as ascertained in 1860 would be subject to modification, according to the result of subsequent business ; and there has been no final adjustment to ascertain how much, if anything, would be to his credit. Dunning could not, as a member of the firm of Leland & Co., and in their name, contract with the plaintiffs to pay them a debt due from him individually, or from another firm of which he was a member. *Chazournes* v. *Edwards*, 3 Pick. 5. The transfer on the defendants' books by their clerk was made without any authority from the firm of Leland & Co.

CHAPMAN, J. It appears that in March 1861 the firm of Leland & Co., doing business in Muscatine, Iowa, made a draft on the firm of Baldwin & Dunning, doing business in Boston, for the sum of $1000, the drawers having no funds in the hands of the drawees. The firm of Leland & Co. had been composed of Thomas J. Leland, since deceased, Gorham A. Leland, Thomas L. Leland, Henry Dunning, and Thomas M. Stockman. The defendants now contend that Dunning ceased to be a member of the firm in January 1861, because at that time a stock account was taken, and the amount due to Dunning as a partner was by consent of all parties transferred on their books to the credit of Baldwin & Dunning. But this fact would not of itself dissolve the partnership. Dunning might be retained as a partner notwithstanding such a transfer. *Taft* v. *Buffum*, 14 Pick. 322. The letter of the defendant Stockman to Brown, dated October 7, substantially admits that he was still a partner.

We must, then, regard him as a partner when the draft

was made. He was also a partner in the firm of Baldwin & Dunning, the drawees. As the drawees had no funds to pay the draft, they borrowed $1000 of the plaintiffs for the purpose and charged the amount to Leland & Co. on their books. In September 1861 they found themselves unable to repay the plaintiffs, having failed in business, and made to the plaintiffs an assignment of the account against the defendants which was still standing on their books, and agreed that it should be transferred to the credit of the plaintiffs on the books of the defendants. On the 12th of September, they wrote a letter to O. W. Brown, the clerk of the defendants, at Muscatine, directing him to make the transfer, and to give the plaintiffs notice of it. On the 16th of September, Brown, having made the transfer as directed, wrote to Baldwin & Dunning, and also to the plaintiffs, notifying them that it was done. It then stood as a credit to the plaintiffs on the books of Leland & Co., the defendants.

As against Baldwin & Dunning this assignment, whether intended as security or payment, was valid; as against Leland & Co. it was valid in equity, and if they assented to it, and passed it to the credit of the plaintiffs on their books, it was valid in law, and the present action may be maintained to recover the amount. *Crocker* v. *Whitney*, 10 Mass. 316. *Mowry* v. *Todd*, 12 Mass. 281.

But none of the members of the firm of Leland & Co., except Dunning, assented to the transfer, and when it came to the knowledge of Stockman on the 7th of October he wrote to Brown dissenting from it. The other partners also objected to it. The question then arises whether Dunning had authority to make it. Undoubtedly such an act is within the general scope of the authority of a partner; and the only reason that can be assigned why Dunning could not do it is, that he was a member of the firm of Baldwin & Dunning, the original creditors. It is objected that he thereby used the partnership funds to pay his own debt.

But this is not a correct view of the matter. The defendants owed the debt to his firm, and not to him personally. We

cannot doubt that as a member of the defendants' firm of Leland & Co. he had a right to take the money or goods of the firm and therewith pay Baldwin & Dunning, and pay the plain-, tiffs with the same money or goods. Or he might have made a negotiable note of the firm of Leland & Co. and used it in the same way. Either of these acts implies an authority of the same character with that which he exercised in directing the transfer of the credit. In *Homer* v. *Wood*, 11 Cush. 62, one of the partners owed a debtor of the firm, and paid his debt by ap-plying upon it the debt due to the firm from his creditor. Thus he applied the assets of the firm to the payment of his private debt, and this was held binding on the firm, although it was a fraud on his part, his creditor having acted in good faith.

But in the present case Dunning did not owe the defendants, and it does not appear that they had any claims of any kind against him. If they had had any claims against him individually, it does not appear that they could have been set off against this debt that they owed to the firm of Baldwin & Dunning. But we have no occasion to decide now whether any right of set-off would have existed, equitable or legal. Nor does it appear that the defendants had any claim against Baldwin & Dunning which they could have set off against this debt. The bill of exceptions presents a simple case of a debt, due from the defendants to Baldwin & Dunning; an assignment of that debt to the plaintiffs; an assent to the transfer by Dunning, a member of the defendant's firm; and a transfer of the credit from Baldwin & Dunning to the plaintiffs by his direction. In the absence of other facts affecting this transfer and assent, it is sufficient to sustain this action.　　　*Exceptions sustained.*