SHERMAN W. KNEVALS, and others, *vs.* JAMES H. BLAUVELT,

UNION MUTUAL LIFE INSURANCE COMPANY, trustee,

and

ASA D. DICKENSON, claimant.

Cumberland.    Opinion March 10, 1890.

*Trustee process.   Assignment.   What passes.   Contingent debt.*
*Defective schedule.*

It is the well settled law of this state that a contingent debt founded on an existing contract is assignable.

The principal defendant, a resident of New York, made an assignment, under the laws of that state, to another resident of the same state. The assignment was in general terms, and included, "all and singular the lands, tenements, hereditaments, appurtenances, goods, stocks, bonds, promissory notes, debts, claims, demands, property, and effects of every description," belonging to the assignor; *Held,* that the assignment passed to the assignee commissions on renewal premiums, due the assignor from an insurance company of which he was an agent, under a contract by which such commissions did not accrue until after the date of the assignment.

The laws of New York require the assignor to file a schedule of assets within twenty days, and if he neglect to do so the assignee must file one. If no such list is filed within thirty days the assignment becomes void. A list was seasonably filed by the assignee, the assignor failing to file one, but no claim for commissions on renewal premiums was found upon it. *Held,* that the assignment was not void for such omission, and that the claim passed to the assignee, whether specified in the schedule or not.

The plaintiffs, having proved their debt for the purpose of receiving dividends under the assignment, cannot now contest its validity.

AGREED STATEMENT.

This was an action of debt, commenced by trustee process, on a judgment recovered October 11th, 1886, by the plaintiffs against the principal defendant, in the city court of New York. All the parties to the action, except the trustee, were inhabitants of that state.

The facts are sufficiently stated in the opinion.

*Wilford G. Chapman,* for plaintiffs.

At the date of the assignment there was nothing due Blauvelt

under the contracts. The receipt of premiums was a condition precedent to any liability of the trustee. May Insurance, 314 a, 342.

Whether or not there would ever be any liability on the part of the company depended on the life and option of each of the policy-holders. It was not a mere question of time when the company would receive these premiums. It was contingent on the voluntary action or life of the policy-holders. The funds attached were not *in esse* at the time of the assignment. There was nothing in the hands of the company that by any possibility could ever come to Blauvelt. There was simply the executory agreement that, on the happening of the uncertain event, the company would pay percentages and commissions as specified in the contracts. This agreement gave Blauvelt no lien on the funds now attached. It was a mere personal agreement by the company to do a certain thing on the happening of an uncertain event. On the happening of the event Blauvelt might have sued the company: but that was his only remedy. *Rogers* v. *Hosack's Ex'rs*, 18 Wend. 334; *Woodard* v. *Herbert*, 24 Maine, 361.

Blauvelt's interest was not a claim or demand. Contract not assignable, and was not in fact assigned. *Kendall* v. *Almy*, 2 Sumn. 293; Bur. Ass. 524, and cases cited: Pom. Eq. § 1280; *French* v. *Morse*, 2 Gray, 111; *Woodard* v. *Herbert*, 24 Maine, 358, 361; *Riggin* v. *Magwire*, 8 N. B. R., 484, S. C., 15 Wall. 549; *Kingsbury* v. *Mattocks*, 81 Maine, 310.

Creditor not prevented from recovering judgment and proceeding against any property not assigned. *Lawrence* v. *McVeagh*, 106 Ind. 210; *Sanborn* v. *Norton*, 59 Tex. 308.

*Harry R. Virgin*, for claimant.

Claims for commissions assignable. *Crocker* v. *Whitney*, 10 Mass. 319; *Cutts* v. *Perkins*, 12 Mass. 210; *Masters* v. *Miller*, 4 Durn. & E. 343; *Tripp* v. *Brownell*, 12 Cush. 376; *Farnsworth* v. *Jackson*, 32 Maine, 422; *Devlin* v. *Mayor*, 63 N. Y. 15; *Hall* v. *Buffalo*, 2 Abb. Ct. of App. Dec. 301; *Augur* v. *Couture*, 68 Maine, 428; *Wade* v. *Bessey*, 76 Maine, 413; *Garland* v. *Harrington*, 51 N. H. 409; *Brackett* v. *Blake*, 7 Met. 339; *Weed* v. *Jewett*, 2 Met. 608; *Hartley* v. *Tapley*, 2 Gray, 566; *Taylor* v. *Lynch*, 5

Gray, 50; *Macomber* v. *Doane,* 2 Allen, 542; *St. Johns* v. *Charles,* 105 Mass. 262; *Low* v. *Pew,* 108 Mass. 350.

Claims for commissions included in assignment: Bur. Ass. §§ 95, 100, 102, 122; *Pingree* v. *Comstock,* 18 Pick. 46; *Brashear* v. *West,* 7 Pet. 608, 614; *Platt* v. *Lott,* 17 N. Y. 478; *Nye* v. *Van Husan,* 6 Mich. 329, S. C. 74 Am. Dec. 690; *Kelloyg* v. *Slauson,* 15 Barb. 56; *Turner* v. *Jaycox,* 40 N. Y. 470; *Couch* v. *Delaplaine,* 2 N. Y. 397; *Whipple* v. *Thayer,* 16 Pick. 25.

Assignment valid as against the attachment. *May* v. *Wannemacher,* 111 Mass. 202; *Burlock* v. *Taylor,* 16 Pick. 335; *Daniels* v. *Willard,* 16 Pick. 36; *Whipple* v. *Thayer,* 16 Pick. 25; *Train* v. *Kendall,* 137 Mass. 366; *Thayer* v. *Daniels,* 113 Mass. 129; *Swan* v. *Crafts,* 124 Mass. 453; *Ingraham* v. *Geyer,* 13 Mass. 146; *Fall River Iron Works* v. *Croade,* 15 Pick. 11; *May* v. *Breed,* 7 Cush. 42; *Martin* v. *Potter,* 11 Gray, 37; *Bank* v. *Chafee,* 71 Maine, 522.

Plaintiffs assented to assignment: *Thompson* v. *Frye,* 57 Hun. (N. Y.) 296.

PETERS, C. J. The contest in this case is between the plaintiffs, who attach by trustee process a fund in the hands of the Union Mutual Life Insurance Company of Portland, and a person who claims the fund as an assignee of the principal defendant under the general assignment law of the State of New York. The plaintiffs, defendant, and claimant are residents of New York. The insurance company has no interest except as a stakeholder.

The fund grew up out of a contract between the insurance company and the defendant, who was the New York agent of the company for procuring applications for insurance in their company. By the contract, the agent (principal defendant) was entitled to a percentage on each policy issued on applications obtained by him, including commissions on premiums annually paid on such policies, styled in the contract "renewal premiums," the company's liability to pay the annual commissions to continue for six years or until prior lapse of policy. The agency of this defendant ceased April 16, 1885. The assignment was made October 15, 1886. At the date of the assignment about $400.00 were due as commissions under the contract, and this sum was

paid to the assignee upon a demand for it upon the company signed jointly by assignor and assignee. The contest is now over commissions which have accrued under the contracts (there were several of them) since the date of the assignment and prior to the writ, amounting to $642.22.

The first question is whether such a contract can be legally assigned. Is it assignable? The attaching creditors' position is that commissions which have accrued since the assignment could not be assigned at the date of the assignment, because at that time it would depend upon circumstances whether any commissions would be earned in the future or not, and that therefore the assignor's claim was then uncertain and contingent. The persons insured might die or allow their policies to lapse, thus preventing further annual renewals or commissions. We do not concur in the proposition.

Probably the insurance company could not assign its side of the contract at any time, and it had nothing at the date of the assignment to assign. But the agent then had a contract fully executed on his side, and had expectation of a good deal of further payment for his services already rendered. He assigns his contract as an entirety, under which moneys were then due and other moneys were reasonably expected to become due. His assignment was of the contract as well as of all dues under it. All that had accrued or would accrue attached to the contract. The contract itself was not contingent or uncertain, though it might have been uncertain, as it is under thousands of contracts, how much its earnings or profits would be. The contract or demand did not depend on a contingency, but whether an action would ever accrue on it or not might so depend. It was long ago adjudged in our jurisprudence that a contingent debt founded on an existing contract is assignable. The present is a good deal like the case of an assignment of a contract of affreightment, which has been held to be valid, though whether any freight will be earned or not depends upon considerable contingency. It is expected that freight will be earned, and that makes foundation enough to uphold an assignment. As said in *Cutts* v. *Perkins*, 12 Mass. p. 212, "it makes no difference, if instead of (an assign-

ment of) a debt now due, it is of money expected to become due at some future time to the assignor, .it appearing that there was an existing contract upon which the debt might arise." The contract is a certainty, its amount of earnings the only uncertainty. As illustrative authorities on this point, see: *Crocker* v. *Whitney*, 10 Mass. 316; *Gardner* v. *Hoeg*, 18 Pick. 168; *Farrar* v. *Smith*, 64 Maine, 74; *Emerson* v. *Railroad*, 67 Maine, 387.

The next question is whether the contract or claim is in fact assigned by the instrument of assignment. We can have no doubt that the language of the instrument is sufficient for such purpose. The assignment is in general terms, and includes "all and singular the lands, tenements, hereditaments, appurtenances, goods, stocks, bonds, promissory notes, debts, claims, demands, property and effects of every description," belonging to such assignor. This language covers this claim. It is a claim and it is property. A debtor might have his all, and a valuable property, in this form. The general words are not to be construed in a restrained sense in these instruments. The law required the debtor to assign all property, and he undertakes to do so, using all the general terms descriptive of property to attain the end. In our own late assignment law, the requirement was that the debtor should assign "all his property real and personal," and the assignment had the effect to include every sort of property whether specified or not. "In such instruments of conveyance the larger intent is evident and governs the construction." Bish. Cont. § 409, and citations. In *Leonard* v. *Nye*, 125 Mass. 455, it was decided, following the doctrine of *Comegys* v. *Vasse*, 1 Pet. 193, that money, recovered before the court of Commissioners of Alabama Claims for a vessel destroyed by a rebel cruiser, belonged to the assignee of the owner, who went into bankruptcy after the destruction of the vessel, but before the treaty between England and the United States which gave reparation for such claims. Those cases establish the assignability of a claim like the present, and establish further that the bankruptcy of the owner operates *per se* as an assignment of such a claim.

Another question is presented. This contract or claim is not in the list of assets filed by the assignee. The law of New York requires the assignor to file a schedule of assets within twenty

days, and if he neglect to do so the assignee must file one. If no such list is filed within thirty days the assignment becomes void. A list was seasonably filed by the assignee, the assignor failing to file one, but this claim is not found upon it.

Was the assignment void for this omission, or is the claim lost to the assignee on that account? Our opinion is that the assignment stands, and that it operates to assign the claim. All property passes whether specified in the schedules or not. Otherwise the bad faith of assignor or assignee, and especially of the two combined, might be most detrimental to innocent creditors. Ordinarily creditors would have no knowledge or even suspicion of omissions. If no schedule at all be filed within the thirty days, all creditors will have notice alike, and can protect themselves. But a schedule, formally and apparently correct, being seasonably filed, the assignment takes effect from its inception. This view is favored by the language of the New York assignment act, which provides that the assignee shall file, on failure of the assignor to do his duty, "such schedule and inventory as he can;" the implication being that perfection might not be attained or expected. But some schedule must be filed. The statute provides certain means and aids to assist the assignee in ferreting out property hidden by the assignor. The plaintiffs cannot consistently claim the assignment to be void, under which, as the case shows, they have proved their debt and have come in under it for the purpose of receiving thereon dividends. And, if the assignment stands, the claim in question stands with it as the property of the assignee for the benefit of all the creditors.

As all the interested parties have their domicil in New York, there can be no objection to allowing their rights to be determined according to the law of that state, especially as we do not appreciate any difference between their judicial opinion and our own upon the pending questions. *Platt* v. *Lott*, 17 N. Y. 468. The trustee must be discharged for the reason that the fund, attempted to be intercepted by the plaintiffs' attachment, belongs to the claimant.

*Trustee discharged. Judgment for the claimant for costs against plaintiffs.*

WALTON, VIRGIN, EMERY, FOSTER and HASKELL, JJ., concurred.