## In re WRIGHT.

(Circuit Court of Appeals, Second Circuit. November 7, 1907.)

No. 55.

1. ASSIGNMENTS—RIGHTS ASSIGNABLE—INTEREST IN CONTRACT.

The fact that a contract for services involves personal trust and confidence, and is therefore not assignable as an entirety, does not prevent the assignability of rights arising out of such contract, as for compensation earned thereunder, where the matter of personal confidence is not involved in such rights.

2. BANKRUPTCY—PROPERTY PASSING TO TRUSTEE — FUTURE COMMISSIONS OF LIFE INSURANCE AGENT.

A bankrupt was managing agent for a life insurance company under a contract having several years to run, which entitled him to an interest in renewal premiums on policies previously written when collected, so long as the contract was in force, subject to the right of the company to terminate such interest, if dissatisfied, or if the bankrupt failed to comply with the contract. In case of his death, his widow or estate was entitled to receive such interest for five years, subject to a fee for collection. *Held*, that such interest was property which the bankrupt could have transferred and therefore passed to his trustee under Bankr. Act July 1, 1898, c. 541, § 70a, 30 Stat. 565 [U. S. Comp. St. 1901, p. 3451].

3. SAME.

The marketability and assignability of property are quite distinct, and the fact that an interest in property is defeasible or contingent does not prevent it from being transferable within the meaning of Bankr. Act July 1, 1898, c. 541, § 70a, 30 Stat. 565 [U. S. Comp. St. 1901, p. 3451].

Petition for Revision of Proceedings of the District Court of the United States for the Western District of New York in Bankruptcy. For opinion below, see 151 Fed. 361.

J. A. Van Arsdale, for petitioner.
Charles P. Norton, for respondent.

Before LACOMBE, COXE, and NOYES, Circuit Judges.

NOYES, Circuit Judge. The bankrupt is a party to a contract with a life insurance company, under which he is appointed its managing agent, and, in addition to commissions for writing new policies, receives commissions upon renewal premiums. The contract has several years to run, and the bankrupt's interest in renewals upon policies in force at the time of the bankruptcy amounts to about $5,000 a year. The contract is terminable by the company in case the agent

fails to comply with its conditions, or the business is unsatisfactory. Upon such termination the interest of the agent ceases. The company agrees to maintain an office and provide a cashier for the purpose of collecting premiums. In case the agent dies, the company pays to his widow, if living, otherwise to his estate, the renewal interest for five years less a collection charge. In case of withdrawal from the territory the agent is entitled to his renewal interest during the term of the contract, provided he continue in the company's service. A creditor applied to the referee in bankruptcy for an order directing the bankrupt to assign this contract to the trustee. The referee declined to make the order, but certified the following question to the District Court: Whether the interest of the bankrupt in the commissions on renewal premiums accrued since the bankruptcy, pursuant to the terms of the contract between him and such life insurance company, was property which, at the time of such bankruptcy, he could by any means have transferred without the consent of the company, or which might have been levied upon and sold under judicial process against him, and also without such consent. The District Court answered this question in the affirmative.

Section 70 of the bankrupt act (Act July 1, 1898, c. 541, 30 Stat. 565 [U. S. Comp. St. 1901, p. 3451]) provides that the trustee shall be vested with "the title of the bankrupt, as of the date he was adjudged a bankrupt, except so far as it is property which is exempt to all * * * (5) Property which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process." The question briefly stated is, therefore, whether the bankrupt's interest in the renewal premiums under the contract was property which he could by any means have transferred.

At the outset, it is apparent that these interests are of substantial value: (1) To the bankrupt. He will receive $5,000 a year from them, and, according to his own testimony, more than three-quarters of the renewal premiums are paid upon mere notice. (2) To the bankrupt's widow or his estate. They will receive the renewal commissions in case of the bankrupt's death less a small collection charge. (3) To the insurance company. Manifestly the company could afford to pay well for a release from the renewal provisions of the contract. So we have interests accruing under a contract which are of value to the insurance company and to the bankrupt and his estate. The only question is whether they are available for the payment of the bankrupt's debts.

Now, it is of little importance whether the bankrupt and the insurance company, jointly or separately, might interfere with the trustee in realizing upon these interests. If they are property which can by any means be transferred, the creditors of the bankrupt are entitled to the benefit of them, however little they may bring. Marketability and assignability are quite distinct. Upon the face of the papers it would seem that the bankrupt had an interest in this contract which should be made available for the payment of his debts. Courts should not be swift to find reasons why creditors should not receive the benefit of all a bankrupt's assets. But these reasons are urged why the

157 F.—35

bankrupt's interest in renewal premiums is not "property which can by any means be transferred" within the meaning of the act: (1) The contract is based upon personal trust and confidence, and cannot be assigned without the consent of the insurance company. (2) The collection of renewal premiums requires the continued and future services of the bankrupt which cannot be appropriated.

It may be conceded that this contract as a whole is based upon personal trust and confidence, and is not assignable. Arkansas Valley Smelting Co. v. Belden Mining Co., 127 U. S. 379, 8 Sup. Ct. 1308, 32 L. Ed. 246. But there is a difference between an absolute assignment of a contract and an assignment of rights under a contract. The personal confidence which precludes the transfer of rights arising out of a contract must be involved in the nature of the rights themselves. Horst v. Roehm (C. C.) 84 Fed. 569. It is not ordinarily involved in the right to receive moneys due or to grow due under a contract, and this right is generally assignable without the consent of the other party. Fortunato v. Patten, 147 N. Y. 277, 41 N. E. 572; Knevals v. Blauvelt, 82 Me. 458, 19 Atl. 818. The right to receive the renewal commissions under the present contract, which is the right involved in the question certified, seems not to involve personal confidence. The contracts of insurance have already been obtained. The collection of renewal premiums is largely a ministerial act. The contract provides that the insurance company shall appoint a cashier to receive such moneys. Even the bankrupt testified that 75 per cent. of the renewal premiums are paid upon mere notice. The collection charge made by the company against an agent's estate is only 2 ½ per cent. It is possible that, if the interests under the contract are transferred to the trustee, the insurance company may defeat the object of the transfer by withholding its consent. It does not appear that it has refused its consent, and there is no presumption that it will do so; but the fact that the interest is defeasible does not prevent its transfer. Defeasible and contingent interests of this nature are assignable. In re Becker (D. C.) 98 Fed. 407; Fortunato v. Patten, supra.

It is urged in the second place that the collection of renewal premiums requires continued service on the part of the bankrupt, and that his creditors are not entitled to his future services. This contention may be agreed to without affecting the question whether the renewal interests are assignable. It is true that, in case they are transferred, the bankrupt cannot be compelled to render any future services. Collection by means of the cashier alone might or might not prove effective. Some arrangement for procuring the bankrupt's services might be desirable. If no arrangement could be made, the insurance company might refuse its consent to the transfer. So it is possible that the bankrupt might cause the forfeiture of the renewal interests by leaving the employment of the company. These contingencies might render the interest to be transferred to the trustee of little value; but they would not render such interest unassignable. Therefore, without examining further the objections to the transfer, we may say that all of them relate to the marketability of the interests in question, rather than the transferability, and have no direct

bearing upon the question certified. We accordingly answer that question in the affirmative.

In thus approving the transfer of the renewal interests to the trustee, we are not unmindful of the probability, already pointed out, that some portion of the premiums could in the future be most advantageously collected by the bankrupt to whose services the trustee is not entitled. But the method of collection we regard as a matter of administration which may safely be left to the discretion of the bankruptcy court. If the bankrupt is willing to render services in the collection of renewal premiums, the referee has authority to fix a fair basis of compensation.

The decision of the District Court is affirmed, with costs.