(No. 13497.—Decree affirmed.)
MARSHALL FIELD III. et al. Appellees, vs. MARSHALL FIELD IV. et al. Appellants.

*Opinion filed April 21, 1921.*

1. WILLS—*when subsequent clause will not postpone distribution of portion of trust estate.* Where a testator creates a trust fund for the benefit of his only son and the three children of said son, and provides that upon the death of any one of said three grandchildren, leaving no issue surviving, the decedent's share of the capital and income of the trust shall go to the surviving grandchildren, a subsequent clause providing for a distribution of the trust estate to the testator's brothers and sisters in the event that the grandchildren or their issue do not live "until the time or times hereinbefore prescribed so as to become entitled to receive said trust estate," does not postpone the distribution of the share of a grandchild who has died without issue, but is merely a residuary clause to prevent intestacy.

2. SAME—*when costs and solicitors' fees may be charged against entire trust estate and not against particular part distributed.* Although a decree construing a will provides for distribution of only a portion of a trust estate provided in the will it is proper to charge costs and solicitors' fees against the entire trust estate, where the decision of the issues raised by the pleadings affects the rights of all the parties to the trust and the construction of the will serves as a guide to the trustees in the future performance of their duties as provided in the will.

APPEAL from the Superior Court of Cook county; the Hon. DENIS E. SULLIVAN, Judge, presiding.

J. F. DAMMANN, JR., guardian *ad litem,* for appellants.

ISHAM, LINCOLN & BEALE, and THOMAS S. FULLER, for appellees.

Mr. JUSTICE CARTER delivered the opinion of the court:

This was a bill filed in the superior court of Cook county by Marshall Field III. and his sister, Gwendolyn Field, to construe the seventh article of the will of the late Marshall

Field, the complainants being grandchildren of the testator. The entire will is a long and carefully prepared document, providing in detail for the distribution of a large estate. While the entire will is found in the record, the fund of which the distribution is here considered was created by the seventh article, which is the part necessary to be more particularly considered in reaching a decision on the questions here involved. The seventh article provided for a trust fund of $5,000,000 for the benefit of his only son, Marshall Field, Jr., and the children of said son. Marshall Field, Jr., died before the testator, but left three children, Marshall Field III., Henry Field and Gwendolyn Field, who survived the testator, and said three grandchildren became the beneficiaries of the trust created by the seventh article. Marshall Field, Sr., died in 1906. In July, 1917, his grandson Henry died, leaving his wife, Nancy Perkins Field, surviving him, but the decree found that he left no lawful issue. The trustees of the fund created by the seventh article, who thereafter qualified in accordance with the provisions of the will, were made parties to this proceeding and answered, stating that they were in doubt as to the interpretation of the provisions of the will and as to whether the prayer of the bill as to certain distributions provided for under said article should be allowed thereunder, and prayed that their rights and duties in that regard be found by the court. The trustees also filed, in addition to their answer, a cross-bill, reciting that it had been alleged that Henry Antony Marsh, born on or about July 11, 1916, was an illegitimate son of Henry Field, and asked the court to construe the will to determine whether or not Marsh was a child of Henry Field and whether he had any rights in the trust estate. Marsh was brought in by service under said cross-bill and a guardian *ad litem* was appointed for him and the other minors who were made parties. The matter was heard in the trial court and a decree entered finding that Marsh had no rights under the

will and that the distribution prayed for in the original bill should be allowed as asked therein. The rights of Marsh are not involved in this appeal. It appears from the record that Marshall Field III. has two minor children,—Marshall Field IV. and Barbara Field. The guardian *ad litem* who prayed this appeal was appointed to act for these two minor children of Marshall Field III. and for the various minor descendants of the brothers and sisters of the testator, Marshall Field, Sr., to whom reference is made in the seventh clause of the will. Counsel for appellants herein insist that the court was wrong in entering the order for distribution that was entered.

For the convenience of reference the seventh article of the will has been divided into clauses, identified by capital letters from A to J, inclusive, each clause referring chiefly to a substantially different subject from the other clauses of the article, and these subdivisions will be followed, for convenience, in this opinion. Only the clauses of the seventh article which are most directly involved in this case will be set out at length in this opinion, the other clauses being set out in general substance, not as construing them with exactness but merely to aid in understanding the points here at issue.

Clause A of the seventh article devised and bequeathed to the trustees a fund of $5,000,000.

Clause B provided that until the testator's son, Marshall Field, Jr., attained the age of forty years, half the income should be paid to him and the other half should be accumulated, and that when the son attained the age of forty years the accumulations should be paid over to him absolutely, and that from and after that time all income of the trust fund should be paid to the son until his death.

Clause C provided that after the death of the son, leaving a child or children, the trustees should hold the trust fund and "apply the net income, and ultimately the capital, as hereinafter provided, for the use and benefit of all the

children of my son surviving him and for the use and benefit of the issue of any child or children that may have died, said issue taking a parent's share *per stirpes;*" that the principal and interest of the fund should be so applied as to give the grandsons, Marshall and Henry, and their respective issue, twice as much as any other child of said son or issue thereof. Under this provision Marshall's share became two-fifths, Henry's two-fifths and Gwendolyn's one-fifth of the $5,000,000 trust estate.

Clause D directed the trustees to make suitable provision out of the net income of the fund for the maintenance and education of the grandchildren during their minority, unless such maintenance and education should be sufficiently provided for from other sources.

Clause E contained directions as to the income to be paid to Marshall, Henry and Gwendolyn, upon and after the death of the testator's son. It directed that the net income of the share of each such grandchild should be accumulated and added to the capital of such share until such grandchild attained the age of twenty-five years, after which, and until such grandchild reached the age of thirty-five years, half of the net income of such share, as enhanced by the accumulations, was directed to be paid to such grandchild and the other half accumulated and added to the capital. Clause E further provided that after such grandchild attained the age of thirty-five years the entire income of the share so enhanced should be paid over to him or her during life.

Clause F provided that in case any one of the three grandchildren (Marshall, Henry and Gwendolyn,) should die leaving lawful issue, the trustees should retain and hold and invest and re-invest for accumulation the share of such grandchild until the youngest child of such grandchild should reach the age of twenty-one years or should die before attaining that age. It then provided that when the youngest child of any such grandchild reached the age of

twenty-one years the trustees should distribute the capital and accumulated income of such share to the surviving children of such grandchild, to be received and held absolutely. This clause contained further provisions concerning other children of the testator's son, if any should be born, (there were none born,) and directed that upon the death of any such other child leaving issue the share of the capital and income of the entire trust estate held in trust for such other child should be distributed absolutely to the issue when the youngest of the issue should attain the age of twenty-one years.

Clauses G, H and I are here set out in full, as follows:

G. "In case any one of my said three grandchildren shall die leaving no issue surviving, or in case all the surviving children of any one of my said three grandchildren shall die before attaining the age of twenty-one (21) years, leaving no issue surviving, I direct that the share of the capital and income of the entire trust estate which would have gone to any surviving children of such deceased grandchild in the event of their living until twenty-one (21) years of age shall in either such case, and in the cases of each and every of such deceased grandchildren and their respective children, go, and I hereby give, devise and bequeath the same, to all the surviving children of my son and their issue *per stirpes,* in the proportions above directed, to-wit, so° that my said grandsons, Marshall and Henry, if living, or their respective issue, if any, *per stirpes,* as the case may be, shall each receive a double portion of said share, and any other children of my son and their issue, *per stirpes,* shall share equally therein.

H. "It is my will and I direct that said trustees hold in trust for any children of my son other than my said grandsons, Marshall and Henry, and my said grand-daughter, Gwendolyn, whether there shall be one or more than one of them, the shares of said trust estate to which such other children may respectively be entitled hereunder, and,

subject to the above directions respecting provisions for maintenance and education, retain and hold and invest and re-invest for accumulation the net income arising out of their said respective shares until the youngest surviving of any such other children shall attain the age of twenty-one (21) years or shall die before attaining that age; and when the youngest surviving of any such other children of my son shall attain the age of twenty-one (21) years, my said trustees shall forthwith distribute, convey, transfer and deliver to such other children then surviving, respectively, and to the issue of any of them that may have deceased, the shares of the entire trust estate to which they shall, as hereinbefore provided, be respectively entitled hereunder. If any such other children of my said son shall die before attaining the age of twenty-one (21) years without leaving any issue surviving, or shall die leaving issue surviving and all such issue shall die before the youngest surviving of such other children of my son shall attain the age of twenty-one (21) years, I direct that in either such event the share of the entire trust estate held in trust for each such other child of my son and the issue of such child shall go, and I hereby give, devise and bequeath the same, to the other surviving children of my son and their issue *per stirpes,* in the same proportions hereinbefore set forth, to be distributed, conveyed, transferred and delivered, as to income and capital, in conformity with the directions herein contained.

I. "In case of the death of my son either before or after my decease, leaving no issue surviving, or in case no issue of his or descendants of such issue shall live until the time or times hereinbefore prescribed so as to become entitled to receive said trust estate as hereinbefore provided, it is my will and I direct that the whole of said trust estate shall go, and I hereby give, devise and bequeath the same in either such case, to my brothers and sisters in equal shares, and to the descendants of such of them, respectively, as shall have deceased."

Clause J provides for the acceptance of the trust by the trustees and for filling vacancies, if any, in the trusteeship.

The decree in this case found that Henry Antony Marsh, the reputed illegitimate son of Henry Field, was not "lawful issue" or "issue" within the meaning of the will, and adjudged that as Henry Field had left no lawful issue, Marshall and Gwendolyn, grandchildren of the testator, each became entitled upon the death of Henry to have distributed to them Henry's two-fifths share of the capital and accumulated income of the trust fund, and directed that the distribution be made by the transfer of cash and property, including certain real estate, as specified therein. The decree also made certain allowances to the complainants and their counsel, to the trustees and their counsel, and to the guardians *ad litem* and their counsel, and directed that these allowances be paid out of the trust fund as an entirety.

Appellants raise no question as to the finding that Henry Antony Marsh was the illegitimate son of Henry Field and therefore not entitled to an interest in the trust estate, but they argue that the court was in error both as to the finding as to the distribution of what would have been Henry's share to complainants, and as to the payment of the attorneys' and trustees' fees from the trust fund as an entirety.

Counsel for appellants argues that the decree was wrong in construing the seventh article of the will so that on the death of Henry his share under clause G of said article should be turned over absolutely, at once, to his brother and sister. Counsel concedes in his argument on this question that if this clause as quoted above stood alone it would justify the decree of the lower court, but claims that, considered in connection with clause I of the seventh article, both the principal and accumulated income under clause G should simply be added to the shares of the survivors and held in trust, along with the original shares, until the time came for distribution of the entire principal and interest of

the trust fund under the seventh article, while counsel for appellees argue that, fairly construed, the seventh article does not show that the testator planned that such share upon Henry's death should be continued in trust.

Counsel for both appellants and appellees argue and agree that in order to reach the fair meaning of the seventh article all of its provisions should be weighed and considered together; and this is undoubtedly the law under the decisions of this court. (*Meins* v. *Meins,* 288 Ill. 463; *Howe* v. *Hodge,* 152 id. 252; *Dickison* v. *Dickison,* 138 id. 541.) Counsel for appellants, while arguing that all parts of the entire seventh article should be considered in reaching its proper construction, lays stress on another rule of construction: that a later clause of the will, when apparently repugnant to a former provision, is to be considered as intending to modify or abrogate the former,—citing *Meins* v. *Meins, supra,* and cases there referred to. Counsel for appellees insist that counsel for appellants is laying too much stress on this rule of construction and does not apply it properly; that it has been held that the fundamental rule of construction is the intention of the testator, to be found from a construction of the whole will, and that such construction should be given as will uphold all of its provisions and give to each clause and part its just operation and effect, and that the tendency of modern decisions, at least, is toward reconciling the apparent repugnancy, if possible, without adopting unreasonable or absurd constructions. They cite the opinion in *Dickison* v. *Dickison, supra,* which on page 546 quotes with approval the language of Redfield on Wills, "that it is now becoming very uncommon with us to hear a court declare a will, or any of its provisions, wholly inoperative by reason of repugnancy or uncertainty," and which opinion goes on to say that the rule which sacrifices the former clause because inconsistent with a later one is never applied except upon failure to give such construction as renders the whole will

effective and allows each provision to stand; that it has been held that to enable the court to uphold all the provisions of the will it is permissible to resort to every reasonable intendment,—to reverse the relative order of the devises or bequests and to transpose the different provisions of the will, if it be possible thereby to render them consistent and give effect to each. (See, also, to the same effect, *Jenks* v. *Jackson,* 127 Ill. 341; *Dee* v. *Dee,* 212 id. 338.) Counsel for appellees also invoke the rule that has been laid down by this court, that in the construction of wills the law favors the heirs or first devisees, and will give a fee simple to the first devisee unless limiting and qualifying words clearly disclose a contrary intention. (*Becker* v. *Becker,* 206 Ill. 53; *Mills* v. *Teel,* 245 id. 483.) This court has also said that "in determining whether a less estate was limited by express words the rule of construction is that an estate given by one clause of a will cannot be cut down or taken away by a subsequent clause except by clear and unambiguous terms." (See, also, to the same effect, *Holmes* v. *Miner,* 247 Ill. 586; *In re Buechner,* 172 N. Y. Supp. 812; *Ralls* v. *Johnson,* 200 Ala. 178.) Counsel for appellees also invoke the principle that "it is a familiar rule in the construction of wills that general provisions must give way to specific provisions." *Saeger* v. *Bode,* 181 Ill. 514; see, also, to the same effect, *Alsop* v. *Russell,* 38 Conn. 99; *DeWitt* v. *Cooper,* 25 N. Y. Super. Ct. 67; *Hascall* v. *King,* 51 N. Y. Supp. 73.

Counsel for appellants in support of his argument suggests that clause I expressly provides that in the failure of the direct line the "whole of said trust estate shall go, and I hereby give, devise and bequeath the same, * * * to my brothers and sisters," and that this fairly means that the entire trust fund of $5,000,000 should be kept together until the final distribution, and that in disposing of his tremendous fortune the testator shows a most carefully thought-out distribution of his vast estate and a most care-

ful, detailed expression of that plan. Counsel for appellees insist that to construe the will as contended for by counsel for appellants would bring the provisions of clause I in direct conflict with the intent and meaning of the provisions of clause G, which clearly intended to diminish the trust estate under clause G and give Henry's share to his brother, Marshall Field III., and his sister, Gwendolyn, absolutely, and that the assumption of counsel for appellants that the "whole of said estate" means the original $5,000,-000 fund and nothing less, is sufficiently answered by pointing out that under clause I the condition precedent upon which the brothers and sisters and their descendants are to take the "whole of said estate" is that no issue of the testator's son or descendants of such issue "shall live until the time or times hereinbefore prescribed so as to become entitled to receive said trust estate as hereinbefore provided;" that one of the times "hereinbefore prescribed" was the death of Henry leaving no issue; that Marshall and Gwendolyn were then living, "so as to become entitled to receive said trust estate as hereinbefore provided;" that therefore the brothers and sisters of the testator and their descendants can never take the "whole of said trust estate," because the condition for their taking can never exist, and that it would be a futile thing to preserve intact the "whole of said trust estate" for the benefit of people who by no possibility could take the whole. Counsel for appellees further argue that it is not the intent of the seventh article that the original fund of $5,000,000 must always be held intact until the final expiration of the trust, (which in no event can occur until after the death of the three grandchildren,) so that the whole of it will be available for distribution to the testator's brothers and sisters and their descendants should the occasion arise for their taking; that if this argument be sustained then it would necessarily follow that no partial distribution whatever can be made, and that if Henry's share is added to the shares held in trust

for Marshall and Gwendolyn, and Gwendolyn should die leaving a child and the child should reach the age of twenty-one, no distribution of Gwendolyn's share can then be made to that child (Marshall being alive) notwithstanding that clause F explicitly directs the trustees to then "distribute, convey, transfer and deliver" Gwendolyn's share to such child for its "own use absolutely forever;" that under this construction it would become impossible to decide what would become of Gwendolyn's share if not distributed to her child upon his reaching the age of twenty-one years; that the testator made no other provision for its distribution, and that the construction urged by counsel for appellants would not only debar the child from receiving the principal of his mother's share but would leave him without right to receive the income therefrom. Counsel for appellees also argue that if there had been children of the testator's son other than Marshall, Henry and Gwendolyn, their shares would be required, under clause H, to be distributed to them when the youngest reached the age of twenty-one years, and that the testator made no provision for any retention or disposition of such shares after that time; that had the testator intended by clause I that no partial distribution should be made until the final expiration of the trust he certainly would have made explicit provision for dealing with the several shares after the time when by clause F, G or H, as the case might be, the shares were to be distributed; that if the views of counsel for appellants be followed to their logical conclusion the result would be to utterly defeat the purpose of the testator as expressed in the seventh article,—particularly the provisions of clause C providing that after the death of his son the income, and ultimately the capital of the trust fund, should be held and applied for the use and benefit of the children of his son and for the use and benefit of their issue; that it is clear, from considering all the clauses of the seventh

article together, the testator did not intend by clause I to change, modify or in any way affect the provisions for the distributions of the trust fund contained in the former clauses; that under clause I the testator intended that the brothers and sisters and their descendants, in the event of the occasion arising for their taking at all, should receive, not the original trust fund of $5,000,000 but the trust fund as it then should be constituted,—that is, the original trust fund plus such additions of capital and minus such distributions of capital as should have been previously made under the specific provisions of former clauses; that it is obvious that, properly construed, clause I was purely residuary in its nature and was made to prevent any part of the trust estate from becoming intestate property, and on its face it discloses a clear intention to dispose of such part, and such part only, of the trust fund as might be left in the hands of the trustees in case there should be no lineal descendants of the testator to take under the other provisions.

Having in mind the rules of construction heretofore stated, it seems obvious that the testator's main purpose under the seventh article, when read with the rest of the will, was to care for his grandchildren and their direct issue instead of trying to keep the entire $5,000,000 trust fund, with its accumulations, together until the whole of it might be disposed of at one time. In our judgment this intention is not only shown by all the provisions of article 7 but is supported by the other provisions of the will found in the record but not referred to specifically by counsel. It is strongly supported by the provisions of article 20 of the will, with the specific provisions therein contained with reference to his grandsons, Marshall and Henry, and their issue, and we are of the opinion that clause I of article 7 was inserted so that by no possibility any part of the $5,000,000 trust fund should descend as intestate property. In our judgment the decree rightly construes article 7 of the will in directing the distribution of Henry's two-fifths

share of the trust estate created by said article to his brother, Marshall, and to his sister, Gwendolyn.

It is argued by counsel for the appellants that the decree is in error in allowing costs and solicitors' fees to be charged in this proceeding against the entire trust estate; that those fees should have been charged only against the fund in question,—that is to say, the two-fifths share of the deceased's grandchild, Henry, in the trust estate. The original bill, while asserting that Marshall and Gwendolyn were entitled to immediate disposition of Henry's two-fifths share in the trust fund, also stated that the trustees were in doubt as to the proper interpretation of the will respecting the rights of complainants and respecting the powers and duties of the trustees in the premises, and prayed the court to direct distribution and to settle such questions as to it should seem equitable and proper. The cross-bill filed by the trustees alleged that questions existed whether Henry Antony Marsh had any rights, and if not, whether the share of Henry Field should be distributed to complainants or be continued to be held in trust during their respective lives, and whether the trustees had power, under the will, to make division to any beneficiaries, and as to other matters, and asked that the will be construed by the court. The guardian *ad litem* for Marsh asserted in his answer that Marsh was the issue of Henry within the meaning of the will and as such was entitled to rights in the trust. The issue raised by the guardian *ad litem* for Marsh, and all other questions raised by the pleadings, both by the trustees and others, were discussed, considered and decided by the lower court. Each of the questions raised and decided affected the rights of every person having an interest in the trust. The rule was laid down in *Lombard* v. *Witbeck,* 173 Ill. 396, that where the questions in controversy affect the rights of all the parties to the trust and the decision thereof will serve as a guide to the trustees in the future performance of their duties, the costs should be charged

against the trust fund as a whole and not against any particular portion of it.    We think this same rule finds support in the reasoning of this court in *Ingraham* v. *Ingraham,* 169 Ill. 432, *Arnold* v. *Alden,* 173 id. 229, and *Dean* v. *Northern Trust Co.* 266 id. 205.    We are of the opinion that under those decisions the decree rightly charged all of the fees of the solicitors and others in question to the entire trust fund.

What we have said disposes of all the questions as to substantial matters raised in the briefs, and the decree of the superior court will be affirmed.    *Decree affirmed.*