## BISHOP v. COMMISSIONER OF INTERNAL REVENUE.

### No. 4517.

Circuit Court of Appeals, Seventh Circuit.

Dec. 9, 1931.

Charles S. Cutting, Morris Glasser, and Charles Melvoin, all of Chicago, Ill., for petitioner.

G. A. Youngquist, Asst. Atty. Gen., and J. Louis Monarch and F. Edward Mitchell, Sp. Assts. to Atty. Gen. (C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Nathan Gamimon, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for respondent.

Before ALSCHULER, EVANS, and SPARKS, Circuit Judges.

SPARKS, Circuit Judge (after stating the facts as above).

The facts in this case are uncontroverted, and the sole question presented is whether the deficiencies added to petitioner's income were authorized by law.

The statutes involved are Revenue Act of 1921, c. 136, 42 Stat. 227, 233, 237:

"Sec. 210. That * * * there shall be levied, collected, and paid for each taxable year upon the net income of every individual a normal tax * * *.

"Sec. 211. (a) That * * * there shall be levied, collected, and paid for each taxable year upon the net income of every individual—

"(1) * * * a surtax * * *.

"Sec. 212. (a) That in the case of an individual the term 'net income' means the gross income as defined in section 213, less the deductions allowed by section 214. * * *

"Sec. 213. That for the purposes of this title * * * the term 'gross income'—

"(a) Includes gains, profits, and income derived from salaries, wages, or compensation for personal service * * * of whatever kind and in whatever form paid, or from professions * * *."

Sections 210, 211 (a), 212 (a), and 213 (a), of the Revenue Act of 1924, c. 234, 43 Stat. 253 (26 USCA §§ 951 note, 952 note, 953, 954), do not differ materially from the provisions of the act of 1921 above referred to.

It is petitioner's contention: (1) That his contractual right to receive renewal commissions constituted an existing property right; (2) that the instrument which he executed was an assignment, in præsenti, of that existing property right to his wife; and (3) that the renewal commissions received by the assignee after the assignment constituted income to her from property then owned by her, and hence they were taxable to her.

With petitioner's first contention we are in accord, but to the others we cannot assent. In support of the last two contentions he has cited many cases, typical of which are Leydig v. Commissioner, 15 B. T. A. 124; O'Malley-Keyes v. Eaton (D. C.) 24 F.(2d) 436; Commissioner v. Field (C. C. A.) 42 F.(2d) 820; In re Wright (C. C. A.) 157 F. 544, 18 L. R. A. (N. S.) 193. With these decisions we are not at variance,

but we think they do not support petitioner's contentions.

In the first case cited Leydig had leased a part of his farm for mining and operating for oil and gas, for which he was to receive, as royalties, free gas and one-eighth of the oil produced. He was contemplating executing a similar lease on another part of his farm, but had not done so. He assigned to his wife an undivided one-half interest in and to any and all oil and gas royalty interests which may have been heretofore, or should be in the future, received or retained by him. The Board held that the lease was ineffective as to the royalty interests subsequently to be acquired by Leydig. As to the existing lease, the Board held that, Leydig having assigned to his wife one-half of the property in the right to receive royalties, the royalties which she later received were her income on the property which had been assigned to her, and, of course, should not be charged as income to Leydig. The Board in its decision uses the following language, which we regard as quite apt: "The cases collected above are singularly free from conflict as to the principle governing the issue raised. From them we conceive the rule to be that income per se can not be assigned to relieve the assignor of the tax levy, but, where the thing assigned was a property right, real or personal, productive of income, income thereafter arising from such property is income to the assignee by virtue of his ownership."

It will be observed that Leydig did not in words assign to his wife one-half of the royalties, but he assigned to her a one-half interest in all oil and gas interests which he then held. It was an interest in the thing that produced the royalties which was assigned. This was the property right which afterwards produced the royalties or income which the Board held was her income and not that of her husband.

In O'Malley-Keyes v. Eaton, supra, appellant irrevocably sold, assigned, and transferred all right, title, and interest in and to all moneys, funds, income, property, and choses in action which she then had, or to which thereafter she might be entitled, in a certain trust fund. She thereby disposed of all of her interest in the trust estate, which included, not only the future income, but the interest in the trust fund which subsequently produced the income.

In re Wright, supra, held that the right to renewal commissions of bankrupt inured to the trustee in bankruptcy because it was a right which bankrupt could have transferred, and that this fact brought it squarely within the statute which designates what property of the bankrupt shall pass to his trustee. In this case, however, no question of income tax was involved. In cases of bankruptcy, each and every asset, either contingent or vested, which is subject to transfer by bankrupt, passes to the trustee, and this is true whether the value be definite or problematical. 11 USCA § 110 (a) (5). The trustee's title to the right to renewal commissions, if and when paid, was a present property right, and this is the property right which the statute transfers to the trustee at the time of the adjudication. The statute conveyed no title to the commissions at the time of the bankruptcy adjudication. They were not then in existence, and might never be. Trustee's title to them was not perfected until the premiums were paid, and, when they were paid, he acquired the commissions by virtue of the property right which the statute gave him at the date of the adjudication.

The decision in Commissioner v. Field, supra, turned upon whether, under a decision of the Supreme Court of Illinois (Field v. Field, 297 Ill. 379, 130 N. E. 748) relative to the matter under discussion, Marshall Field had a present interest in the income of Henry Field's share of a trust fund assignable under the law of Illinois. The court held that under the Illinois decree Henry's share, after his death, was not limited, but went to Marshall upon Henry's death merely as a trust fund until Marshall became fifty years of age, at which time Marshall got the principal, and that the trust was terminable at any time at Marshall's will. Accepting this decree as binding, the Circuit Court of Appeals held that Marshall was absolutely entitled to the income, and that it was a present right, and that upon assignment to his wife the income should be charged to his wife and not to Marshall. In that case the income on the trust fund was not contingent—it was a present right, and fixed in all respects except as to amount.

In the instant case there are two elements to consider: (1) The contract between petitioner and the insurance company, which gave the right, if any, to the renewal commissions. This was a property right. (2) The renewal commissions, which might or might not come into existence. The first element was never assigned to petitioner's wife. The second element was assigned to her, and we think it was not a property right in præsenti.

It is the law that insurance renewal commissions, for the purposes of taxation, shall not be charged as income to petitioner until the premiums have been paid. The reason for this is that it would be inequitable to charge him with income which he had not received and which he might never receive. It is true that he has earned them in the sense that he has labored for them; but, as a matter of contractual right, he has not earned them, in the sense of meriting or deserving them, until the premiums have been paid.

We are convinced that the subject-matter of petitioner's assignment to his wife was income per se, and that it was not in any sense a present property right which was itself productive of income. Petitioner's third contention illustrates the distinction. He says the renewal commissions received by his wife were income to her from property then owned by her, and hence were taxable to her. But what property did she then own which produced these commissions? Certainly none, for petitioner had assigned her nothing but the commissions.

The distinction is very clearly recognized in Hall v. Burnet, Commissioner, 54 F.(2d) 443, decided by the Court of Appeals of the District of Columbia, November 16, 1931. In that case appellant, a life insurance agent, entered into a contract with his second wife, in which her rights in his property were defined for the protection of his children by a former marriage, in consideration of which she renounced her dower. Among other considerations moving from him he sold, assigned, and transferred to her an undivided interest in his contract with the insurance company. The court held that one-half of the subsequent renewal commissions should be taxed, not to appellant but to the wife, as income accruing to her from the property right which appellant had assigned to her. The court said: " * * * it is obvious that if what was here sought to be conveyed from the husband to the wife was salary, or personal earnings, the same would still be taxable to him though he never actually received it, but in the view we take of this case, what was assigned was neither income nor earnings, but property. It was not an assignment of future earnings but the transfer of a property right, and though this property right gave rise to future income, uncertain and contingent though it might be as to amount, that fact does not destroy the distinction."

In the instant case, however, we think it quite clear, even after the assignment, that the commissions became income to petitioner before they passed to his wife. This is manifest by the language of the assignment, which says, "that said renewal commissions shall not in any event be payable to said assignee unless and until they become due and payable to me under the terms and provisions of the aforesaid contract." It is perfectly obvious from this language that petitioner had no intention of conveying a property right in præsenti, but only in future income as it might become due to him. This brings the case squarely within the rule that instruments intended to deflect income subsequently falling due serially are unavailing for tax purposes. Lucas v. Earl, 281 U. S. 111, 50 S. Ct. 241, 74 L. Ed. 731.

Another reason which must preclude petitioner's recovery is that the burden of establishing error in the Board's finding is upon him. It will be observed that the assignment is made subject to the conditions of the contract existing between the company and petitioner. That contract is not in the record, and hence we have no way of knowing what sort of title to the commissions was given to the wife. For aught we know that contract may prevent an absolute assignment. Anything less than this would be sufficient to defeat petitioner's claim. Mitchel v. Bowers (C. C. A.) 15 F.(2d) 287.

The order of the Board of Tax Appeals is affirmed.